[Crim. No. 229. Fourth Appellate District.—June 9, 1932.]

THE PEOPLE, Respondent, v. JOHN R. CONNORS, Appellant.

Edgar G. Langford for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

SCOVEL, J., *pro tem.*—The information in this matter charged the defendant with the crime of murder, alleging that on the twenty-third day of November, 1931, the defendant killed one Betty Stryker. The defendant, at the time of the arraignment, pleaded guilty. At the time for pronouncement of judgment certain evidence consisting almost wholly of a statement by the defendant was introduced to determine the degree of the crime. The court found the crime to be that of murder in the first degree and the defendant was sentenced to life imprisonment. From this judgment and sentence the defendant appeals on the ground that the evidence is insufficient to show the crime to have been that of murder in the first degree. We are in accord with defendant's contention.

From defendant's statement given at the time of the pronouncement of judgment it appears that for a period of approximately one and one-half years defendant and decedent had been living together in a state of illicit relationship. Defendant was employed at the race-track in Tijuana, living in San Diego with decedent. Prior to September, 1931, the defendant had been employed at the race-track at Tanforan. Returning to San Diego in the latter part of this month he found the decedent and a man by the name of Tom in his home in a compromising situation. The defendant ordered Tom to leave. On the morning of the murder the defendant returned from Tijuana to his home in San Diego finding the decedent absent. Defendant walked down to the postoffice and upon his return commenced cooking breakfast. Shortly thereafter the decedent returned and thereupon defendant accused her of having been "out with Tom". From this quite an argument started, and

according to defendant's statement decedent during the argument stated: "If you mention Tom's name again I will break your head with this hammer." Both started for the hammer which was on the ice-box about three feet away, and during the ensuing scuffle the defendant got the hammer and hit the deceased while she was pulling his hair. The defendant then wrote a note stating that if anything happened to either of them Tom was the cause of it. He then cut his own throat. From the blow in the head decedent died. The foregoing constitutes all of the evidence introduced relative to the murder except the testimony of two witnesses who stated that during the altercation they heard the decedent scream.

We are of the opinion that the evidence produced fails to show the wilful, deliberate and premeditated intent to kill necessary to constitute the crime that of murder in the first degree. Murder is defined as the unlawful killing of a human being with malice aforethought. (Pen. Code, sec. 187.) All murder which is perpetrated by means of poison or lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree. All other kinds of murders are of the second degree. "To be murder of the first degree under our statute the killing must be premeditated except when done in the perpetration of certain felonies; that is to say, the unlawful killing must be accompanied with the deliberate and clear intent to take life." (*People* v. *Howard,* 211 Cal. 322 [71 A. L. R. 1385, 295 Pac. 333, 336].) The facts of the present case are startlingly similar to those of *People* v. *Howard, supra,* in which the Supreme Court modified a conviction of murder in the first degree. In the cited case the defendant killed one Cooley with a hammer. The two had occupied the same apartment for some time. The defendant first claimed that the killing had been done by a robber, later admitting that he himself had struck the fatal blow during an argument between the two over a bottle of whisky; that he had then disordered the room in order to give the appearance that the killing had been. done in an attempt to burglarize the apartment. He admitted having called on the decedent's estranged wife

prior to the homicide, but denied that he had ever proposed marriage to her. She testified, however, that he had proposed marriage to her and that she had told him that she would never marry anyone as long as her husband was alive. From the facts the court determined that there was not sufficient proof of a wilful, deliberate and premeditated attempt to kill, and reduced the conviction to murder in the second degree. As in the Cooley case, unless credit be given to the statement of the defendant Connors, the record is devoid of any evidence tending to show the circumstances surrounding the commission of the crime. The court in determining the degree had the right of course to reject any portion of the statement, and was not bound to accept defendant's contention that the decedent was the aggressor. If the testimony as to this is disregarded, however, there remains nothing from which more than a bare inference could be drawn as to how the affair started. Apparently defendant and decedent engaged in a quarrel before the blow was struck. From the evidence it appears that both parties were of approximately the same height and weight, the decedent, if anything, being the larger. During the scuffle, decedent pulled defendant's hair and during the fight the blow was struck. There is nothing to show that the killing was either premeditated or that it was accompanied with a deliberate and clear intent to take life. Under the circumstances we are of the opinion that the record shows at most murder in the second degree.

Counsel for the People suggest that the fact that the deceased had been living together with the defendant without the bonds of matrimony indicates clearly that the defendant was undoubtedly the aggressor. Just how the fact of an illicit liaison indicates that one party thereto is more the aggressor than the other does not appear. It is further contended that the evidence of the two witnesses that they heard the decedent scream also tends to show that the defendant was the aggressor. Some inference to this effect might arise from this fact, but an equal inference might also arise that the scream was caused by the pain from the fatal blow. We do not feel that this fact alone, unsupported by any other evidence of premeditation is sufficient to constitute the crime that of murder in the first degree.

"When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree." (*People* v. *Howard, supra.*)

Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable. (Pen. Code, sec. 1105.) From the defendant's own statement it appears that the argument or quarrel from which the killing resulted was commenced by him. Considering, as we may, that no attempt was made on his part to stop the quarrel, and that perhaps to some extent he may have been the aggressor therein, we do not feel that such provocation was shown as would excuse the homicide or reduce it to manslaughter. Since the evidence indicates that the defendant was not guilty of the degree of the crime of which he was convicted, but that he was guilty of a lesser degree thereof, the judgment should be modified accordingly without granting or ordering a new trial. (Pen. Code, sec. 1181.)

The judgment of the lower court of murder of the first degree is modified and the cause is remanded to the trial court with directions to enter a judgment against the defendant finding him guilty of murder of the second degree and to thereupon pronounce judgment upon him as prescribed by law.

Barnard, P. J., and Marks, J., concurred.