[Crim. No. 316.   Fourth Appellate District.—November 25, 1935.]

## THE PEOPLE, Respondent, v. GERALD RICHARDSON, Appellant.

Joseph W. Ryan for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

MARKS, J.—Defendant was convicted of the crime of burglary in the first degree.  He has appealed from the judgment and from the order denying his motion for new trial. He presents two grounds for a reversal of the judgment and order; first, that the evidence is insufficient to sustain his conviction of burglary in either the first or second degrees, and, second, that it is insufficient to sustain his conviction of burglary in the first degree.

S. B. Clasbey owned an orange grove west of Anaheim in Orange County.  On it was situated a house in which he

and his family resided. On March 31, 1935, the Clasbeys left the house at about 1 o'clock in the afternoon, leaving it thoroughly locked. They returned at about 8:30 o'clock the same evening, found the back door broken open and that a shotgun, two watches, a gold cigarette lighter and some jewelry had been stolen.

Defendant and one Leo Marlowe became acquainted in Dallas, Texas, in 1931. They again met while prisoners in a San Quentin prison road camp in northern California. Defendant was released in the fall of 1934 and Marlowe in the latter part of March, 1935.

On his release defendant went to Los Angeles and lived with J. R. Mailman, who did not know of his prison record. Defendant secured employment as a truck driver with the Beggs Produce Company. On each day of the week, except Saturday, he drove a truck on the round trip between Los Angeles and Carlsbad, usually ending the trip in Los Angeles around 8 or 8:30 o'clock at night.

Marlowe appeared at the Mailman home in Los Angeles on March 24, 1935. During the ensuing week he spent several nights there as the guest of defendant, both occupying the same room. The first trip on which Marlowe accompanied defendant was on March 31, 1935. Upon this trip, when the truck was opposite the Clasbey home Marlowe asked defendant to stop, saying he had to get something there. The truck was stopped and Marlowe went toward the house where he remained some time. Defendant became impatient, alighted from the truck and went through the orchard toward the rear of the house from which place he called to Marlowe who appeared bearing a bundle wrapped in paper. The two returned through the orchard to the truck and the journey to Carlsbad was resumed. Marlowe spent the night with defendant and the gun was placed in the closet of the bedroom. The foregoing facts are all gleaned from the testimony of defendant who maintained he did not know that Marlowe had entered the house and stolen the property.

We learn from other evidence that the tracks of the truck were found in the soft dirt along the roadside by the Clasbey property; that the defendant's footprints were found leading from the tire tracks through the soft orchard dirt to within about fifteen feet of the rear door of the Clasbey house and that defendant's and another's footprints returned through

the orchard to the tire tracks. On the morning of April 1st three men saw an automobile belonging to defendant driven along an unused road in Lacy Field Playground in Los Angeles and stopped where weeds were high. A man alighted from the auto, took an object from it which he hid in the weeds. It was found to be the stolen shotgun. One of the three men identified defendant as the man who drove the automobile and secreted the shotgun: A second could not identify defendant and the third was of the opinion that the man was not defendant. About two weeks later the same automobile was driven to the same spot. The driver alighted and made a search in the weeds. The shotgun had been removed. There is other evidence in the record which we need not detail or rely upon as the foregoing is sufficient to support the conviction.

It is not disputed that Marlowe actually committed the burglary. There are sufficient incriminating inferences to be drawn from defendant's testimony to furnish circumstantial evidence to support the conviction against him. Marlowe was a stranger to the scene of the burglary while defendant had passed the Clasbey house many times. Would Marlowe, knowing nothing of the Clasbey home or habits, select that place as the scene of his crime without advice from one familiar or who had an opportunity to become familiar with them? When defendant became impatient, why did he go through the orchard and halloo near the back door instead of going to the front door and ringing the bell to call the residents and inquire of them for Marlowe if he had not been of the belief that the residents were absent? Marlowe went empty handed to the house, which defendant seemed by his actions to believe unoccupied, and returned with a package which was placed in the truck driven by defendant where it remained until the return to Los Angeles. The shotgun remained in the closet of defendant's bedroom during the ensuing night. It was hidden by defendant next morning. These facts show a guilty knowledge. The conclusion that defendant and Marlowe were engaged in a joint criminal venture in which Marlowe did the breaking, entering and stealing, and defendant acted as his "look-out" was one reasonably and properly drawn by the jury.

While we are of the opinion that the evidence shows defendant guilty of burglary, we have reached the conclusion

that he was proven guilty of burglary in the second degree only. The attorney-general does not contend that defendant was armed, or that he armed himself, during the burglary as the stolen shotgun was "knocked down". The question of the hour of the burglary is determinative of its degree in this case.

Section 1097 of the Penal Code provides: "When it appears that the defendant has committed a public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only."

There is not sufficient evidence in the record to satisfy anyone that the burglary was committed in the night-time as that term is defined by section 463 of the Penal Code. A careful study of the record leaves us with the opinion that it was committed during the daytime.

When it appears to us that the defendant is guilty of a lesser degree of a crime than that of which he was convicted we have the power to modify the judgment without ordering a new trial. (Sec. 1181, subd. 6, Pen. Code; *People* v. *Kelley,* 208 Cal. 387 [281 Pac. 609]; *People* v. *Howard,* 211 Cal. 322 [295 Pac. 333, 71 A. L. R. 1385]; *People* v. *McIntyre,* 213 Cal. 50 [1 Pac. (2d) 443]; *People* v. *Harvey,* 109 Cal. App. 111 [292 Pac. 654]; *People* v. *Connors,* 124 Cal. App. 216 [12 Pac. (2d) 43]; *People* v. *Peter,* 125 Cal. App. 657 [14 Pac. (2d) 166]; *People* v. *Harshaw,* 128 Cal. App. 212 [16 Pac. (2d) 1025]; *People* v. *Warwick,* 135 Cal. App. 476 [27 Pac. (2d) 396].)

The judgment of burglary of the first degree is modified. The cause is remanded to the trial court with directions to enter a judgment against defendant finding him guilty of burglary of the second degree and thereupon to pronounce judgment upon him as prescribed by law. As modified the judgment, and the order denying the motion for new trial, are affirmed.

Barnard, P. J., and Jennings, J., concurred.