[Crim. No. 7273.   Second Dist., Div. Three.   Jan. 31, 1961.]

THE PEOPLE, Respondent, v. JESSIE JAMES GILBERT, Appellant.

*Assigned by Chairman of Judicial Council.

724

George E. Shibley and Ernest L. Graves for Appellant.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

FORD, J.—This is an appeal from a judgment of conviction of burglary of the first degree and from an order denying a motion for a new trial.[1] The sole contention of the appellant

---

[1]In addition to the accusation of the crime of burglary, it was alleged in the information that in 1945 the appellant was convicted of the crime of burglary, a felony, and that he served a term of imprisonment therefor in the state prison. It was further alleged that in 1947 he was convicted of the crimes of murder and assault with a deadly weapon, felonies, and that he served a term of imprisonment therefor in the state prison. The trial court found that such allegations were true. However, the minutes of the court embodying the judgment erroneously state that the motion "to strike priors is granted"; obviously, this is a clerical error as appears from other portions of the minutes and from the reporter's transcript.

is that the trial judge (the appellant having waived his right to trial by jury) should have determined the offense to have been burglary of the second degree rather than of the first degree.[2]

The evidence upon which the conviction rests will be summarized. On January 27, 1960, at about 6:20 p. m., Arthur Rene stopped at the home of Mary Elizabeth Tucker in the city of Long Beach so that he might take care of newspapers left there during Mrs. Tucker's absence. It was just getting dark. As he was walking up to the front door, he heard male voices emanating from the garage which was a part of the residential structure and was located "at the front west part of the house."[3] The door of the garage was closed. He went across the street to a neighbor's home and called the police. When the officers arrived, Mr. Rene and one of them entered the house by means of a key which Mr. Rene had. Mr. Rene turned on some lights. Someone jumped through a plate-glass window in the dining area. Hearing some movement in the hallway, Mr. Rene and the officer went toward a bedroom. At that moment, the sound of a shot came from the direction of the backyard. The appellant was found in the bedroom. He was holding a crowbar but, as the officer approached, he raised his arms and said, "Don't shoot." Handcuffs were placed on the appellant. Mrs. Tucker was called and she returned home in about 15 minutes. A number of articles of jewelry which belonged to her were found in the appellant's pockets.

Alan Evenson, the police officer who accompanied Mr. Rene into the house, received the call from the station to go to the house at about 6:33 p. m. He did not see the crowbar when he entered the bedroom. Another officer found it there at a later time and removed it.

Mrs. Tucker had departed from the house about 11:20 a. m.; when she left at that time, the doors were locked. It was stipulated that sunset was at 5:32 p. m. on that day and that the twilight thereafter was of a duration of 25 minutes.

---

[2] Section 459 of the Penal Code is in part as follows: "Every person who enters any house . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

Section 460 of that code is in part as follows: "1. Every burglary of an inhabited dwelling house . . . or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon . . . is burglary of the first degree. 2. All other kinds of burglary are of the second degree. . . ."

[3] The record fails to disclose the nature of the means of ingress from the garage into the other parts of the residential building.

The appellant testified in his own behalf. He said that at the time of the incident he was drunk. After drinking in a bar, he next recalled that he was trapped in a dark place and was trying to get out. This was "quite some time" before he saw Mr. Rene and Officer Evenson. He later found out that the "dark place" was Mrs. Tucker's garage. He did not know how long he had been in there. When he finally got out, "it must have been quite a while afterwards that the police came in . . . [m]aybe 20, 25 minutes."

It is, of course, clear that the Tucker residence was an inhabited dwelling house even though Mrs. Tucker was temporarily absent from the premises. (*People* v. *Loggins,* 132 Cal.App.2d 736, 738 [282 P.2d 961]; *People* v. *Stewart,* 113 Cal.App.2d 687, 691 [248 P.2d 768]; *People* v. *Hann,* 104 Cal.App. 492, 493 [285 P. 1070]; *People* v. *Allard,* 99 Cal.App. 591, 592 [179 P. 182].) We turn first to the contention of the appellant that the evidence was insufficient to show that the entry was in the nighttime. In section 463 of the Penal Code, nighttime is defined as being the period of time between sunset and sunrise. The question thus presented on appeal is whether there was substantial evidence to support the conclusion of the trier of fact. (*People* v. *Daugherty,* 40 Cal.2d 876, 885-886 [256 P.2d 911].) We believe that there was not in this case. Mere speculation could not suffice. There was no reasonable basis for a conclusion that the entry occurred after 5:32 p. m. rather than prior thereto. (*Cf. People* v. *Wozniak,* 167 Cal.App.2d 448 [334 P.2d 689]; *People* v. *Golembiewski,* 25 Cal.App.2d 115, 118 [76 P.2d 717]; *People* v. *Richardson,* 10 Cal.App.2d 379, 382 [51 P.2d 1114]; *People* v. *Clements,* 6 Cal.App.2d 582, 584 [44 P.2d 657].)

The remaining problem is whether the evidence was sufficient to show that the appellant was armed with a deadly weapon. While the crowbar was not a weapon in the strict sense of the word, it could be used as such. (See *People* v. *Raleigh,* 128 Cal.App. 105, 108-109 [16 P.2d 752].) The applicable law is succinctly stated in *People* v. *Cloninger,* 165 Cal.App.2d 86 [331 P.2d 441], at page 88: "A deadly weapon is one likely to produce death or great bodily injury. (*People* v. *Fuqua,* 58 Cal. 245; *People* v. *Cook,* 15 Cal.2d 507 [102 P.2d 752].) If it appears that the instrumentality is capable of being used in a deadly or dangerous manner and it may be fairly inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, its character as a dangerous or deadly weapon may be thus established, at least for the purposes of

that occasion. (*People* v. *Morlock*, 46 Cal.2d 141, 145-146 [292 P.2d 897].)'' ██ Measured by such test, the evidence in this case fell short of sustaining a finding that the appellant was armed with a deadly weapon because there was no reasonable basis for an inference that he intended to use the crowbar as a weapon should the circumstances require. Obviously, he intended to use it as a burglar's tool, but that is not enough to make the crime one of the first degree.

Under the circumstances here presented, this court is empowered to modify the judgment. (Pen. Code, § 1181, subd. 6; *People* v. *Moreno*, 6 Cal.2d 480, 481 [58 P.2d 629]; *People* v. *Richardson*, *supra*, 10 Cal.App.2d 379, 382; *People* v. *Warwick*, 135 Cal.App. 476, 478 [27 P.2d 396]; see *People* v. *Gaither*, 173 Cal.App.2d 662, 672 [343 P.2d 799]; *People* v. *Lynch*, 60 Cal.App.2d 133, 141 [140 P.2d 418]; *People* v. *Golembiewski*, *supra*, 25 Cal.App.2d 115, 120; *People* v. *Clements*, *supra*, 6 Cal.App.2d 582, 584.) The judgment of conviction of burglary is modified so as to be a judgment of conviction of burglary of the second degree; the judgment, as so modified, is affirmed; the order denying the motion for a new trial is affirmed. The cause is remanded to the trial court with directions to enter judgment of conviction of burglary of the second degree against appellant and thereupon to pronounce judgment upon him as prescribed by law.

Shinn, P. J., and Vallée, J., concurred.