[Crim. No. 1818. Fourth Dist. May 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD ANTHONY VALDEZ, Defendant and Appellant.

Richard Anthony Valdez, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—The defendant, appellant herein, was charged with burglary, i.e., a violation of section 459 of the Penal Code, and with three prior felony convictions, two of which also were for burglary; entered a plea of not guilty; eventually admitted the prior convictions; was tried by a jury which found him guilty of burglary in the first degree; was sentenced to imprisonment in the state prison; and appeals from the judgment entered, contending that it should be reversed because:

1. The evidence is insufficient to establish the offense of burglary in the first degree;

2. Certain evidence to which he objected was the product of an illegal search and seizure;

3. He was not permitted to inspect the notes of the district attorney taken while interviewing a witness;

4. The taking of testimony outside the presence of the jury in connection with the ruling upon the latter two matters was error; and

5. The interview with the witness in question was outside his presence and violated his right to be confronted by witnesses testifying against him.

■ Preliminarily it should be observed that in passing upon the sufficiency of the evidence in support of the verdict, and upon the propriety of the orders of the trial court overruling the defendant's objections to the admission of evidence and denying his motion for an inspection of the district attorney's notes, only that evidence, the interpretations thereof, and the inferences reasonably deducible therefrom which support the verdict, and the rulings in question, may be considered by this court. (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 507 [289 P.2d 476] ; *People* v. *Daugherty,* 40 Cal.2d 876, 886 [256 P.2d 911] ; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) The facts in this case will be stated accordingly.

The premises identified as 824 Tangiers Court, at Mission Beach, in San Diego, were entered unlawfully between 3 :30 o'clock on the afternoon of March 9, 1961 and 8 o'clock the following morning; green louvered doors and a white cabinet were taken therefrom; and pry marks were left on the woodwork where the doors had been removed. A police officer investigating the burglary found particles of wood and screws, both with green paint thereon, in an adjoining alley and in the next yard, which was a part of the premises designated 820 and 820½. The defendant lived in the apartment numbered

820 and a man named Evans lived in the apartment numbered 820½. Eventually the officer contacted Evans and obtained permission to make a search of his premises. The officer testified that as he and Evans approached the latter's apartment the defendant came to the back door and asked what was happening; was informed that a search was being conducted for some property that had been stolen; was asked if he would give the officer permission to look through his premises; and indicated that "he assented." The officer recognized the defendant as a person who had been the subject of a previous burglary investigation which revealed that he had a prior criminal record. The search of the Evans premises was made first, and while there the officer heard sounds coming from the defendant's apartment such as would be made by the moving of a heavy object. The officer then went next door; asked the defendant if he might look around the house and was given permission to do so; went into the bedroom from which defendant had exited; pulled back the drapery over a closet which was located in the direction from which he had heard the sounds in question; and observed the stolen cabinet. The defendant was asked where the doors were; at first denied knowing anything about them; and then revealed that they were hidden under the bedclothes on the bed.

The defendant gave several conflicting statements as to the manner in which he came into possession of the stolen articles, among which were that he had purchased them, that he had found them, and that he took them, sometime after dark, under the belief that the owner, who had just moved out, did not want them.

On the day following his arrest the defendant was interviewed by another officer who asked for and received permission to obtain the stolen property from the subject premises; accompanied the officer thereto; and gave the latter permission to conduct a further search, in the course of which a tire iron was found. The evidence shows that this tire iron bore samples of paint similar to that with which the louvered doors had been painted.

It is uncontradicted that on March 9th at 3:30 p. m., the tenant who previously had occupied the premises thereafter burglarized, having moved therefrom about a week previously, relinquished the same to the owner; in the meantime the premises had been rented to a third person whose occupancy was not scheduled to commence until March 13th; and that the new tenant, preparatory to moving in, came to the premises

on the morning of March 10th to unlock the door in order to enable certain public utilities to be connected, and discovered the burglary.

## First Degree Burglary

The evidence adequately establishes that the defendant was guilty of burglary. However, he contends that there is no evidence to show that the burglary in question was burglary in the first degree. The plaintiff claims that the subject premises were inhabited and that the defendant's entry therein during the night time made the offense of which he was found guilty burglary in the first degree, citing section 460 of the Penal Code in support of this position. The defendant argues that the evidence does not establish that the premises in question were inhabited and, therefore, entry thereof in the night time did not constitute burglary in the first degree. (*People v. Clinton*, 70 Cal.App. 262 [233 P. 78]; *People v. Higbee*, 70 Cal.App. 788 [233 P. 79].)

On the night of March 9, 1961, the dwelling in question was an unoccupied rental unit. No one was residing therein. Actual occupancy was not scheduled until March 13th. ▌ As defined in Penal Code section 460, a dwelling house is inhabited if a person resides therein even though it may be temporarily unoccupied. (*People v. Gilbert*, 188 Cal.App.2d 723, 726 [10 Cal.Rptr. 799]; *People v. Loggins*, 132 Cal.App. 2d 736, 738 [282 P.2d 961]; *People v. Allard*, 99 Cal.App. 591, 592 [279 P. 182].) ▌ However, the dwelling house in the case at bar, at the time in question, was not the residence of a person who was temporarily absent. It was not the residence of the new tenant, of the landlord, or of the old tenant. It was not the dwelling house of either of them. For this reason, we conclude that it then was uninhabited and the verdict should have been limited to burglary in the second degree.

## Search and Seizure

▌ The officers who engaged in the searches to which objection was made, testified that their entry into and the subsequent search of the defendant's premises were conducted with his consent. He denies that consent was given. Nevertheless, in support of the order overruling his objections to the evidence obtained as a result of these searches, we must assume that the trial court accepted the testimony of the officers and rejected that of the defendant. (*People v. Cunningham*, 188 Cal.App.2d 606, 609 [10 Cal.Rptr. 604]; *People v. Neal*, 181

564

Cal.App.2d 304, 308 [5 Cal.Rptr. 241].) █ A search based upon consent is not unlawful. (*People* v. *Lane*, 56 Cal.2d 773, 785 [16 Cal.Rptr. 801, 366 P.2d 57] ; *People* v. *Accardy*, 184 Cal.App.2d 1, 3-4 [7 Cal.Rptr. 167].)

## DISCOVERY

█ On rebuttal, the plaintiff called the former tenant of the burglarized premises as a witness, who testified, in substance, that on four occasions she had conversations with the defendant; in the first of these he asked her whether she owned the cabinet in question; on the second occasion he was in her house to show her how to operate a record player; on the third occasion she saw him the morning after the burglary and asked if he had heard any noises the night before, and he said: "No. Why? What happened?"; and on the fourth occasion, which was after the defendant's arrest and release on bail, he came to her home and stated that he wanted to apologize for the trouble he had caused her and told her that he had "bought the cabinet from somewhere." In the course of her direct examination the witness said that the district attorney had been to her home and had taken a statement from her. On cross-examination she was asked if she had made a statement to the district attorney and she said: "Yes, I did make a statement to them. I mean, they came to the house and asked me some questions." Thereupon counsel for the defendant asked that he be furnished a copy of the statement in question, and the court advised the district attorney that if there was such a statement defense counsel was "entitled to it." Thereafter, outside of the presence of the jury, a further discussion of the matter ensued. Additional evidence upon the subject was introduced from which it appeared that the witness was interviewed by a deputy district attorney the day preceeding the preliminary hearing; that this was the only time she was so interviewed; that she did not sign any written statement; that she did not make a statement, as such, but replied to questions propounded to her by the attorney; that the latter made notes, the object of which was to remind him to interrogate the witness about particular matters; that these notes were not narrative in form, did not relate what the witness said *in haec verba* or even in substance, although they were based on what the witness stated; that they consisted of incomplete two or three word phrases; that the notes were to be used to enable the attorney to interrogate the witness at the time of trial and were made as a part of his preparation for trial.

The court concluded that the notes did not constitute a statement of the witness' information concerning the case. A review of the evidence respecting their contents dictates the conclusion that, of themselves, they would be of no value to the defendant; were made as an aid to memory; and would require interpretation which could be given only by the attorney who prepared them. Unless the defendant has the right to interrogate the deputy district attorney for the purpose of discovering the information possessed by him, the subject notes would be of no value. Such a procedure would be impracticable; would impose an unjust burden on the prosecution; is not encompassed within the defendant's right to a fair trial; and is contrary to "sound reasons of policy." (*Trade Center Properties, Inc.* v. *Superior Court,* 185 Cal. App.2d 409, 411 [8 Cal.Rptr. 345] ; *People* v. *Cathey,* 186 Cal. App.2d 217, 221 [8 Cal.Rptr. 694] ; see *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 399-402 [15 Cal.Rptr. 90, 364 P.2d 266] ; *Hickman* v. *Taylor,* 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451].)

Considering the circumstances under which the notes were prepared, it further appears that they necessarily contain the attorney's interpretation of the witness' version of the facts related by her. To submit this type of information to an adversary would result in confusion rather than clarification; would have a tendency to obstruct rather than assist in determining the truth; and would impede the administration of justice.

Furthermore, to obtain an inspection of material in possession of the prosecution, a defendant must make a showing which will establish some cause therefor other than "a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." (*People* v. *Cooper,* 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964] ; *People* v. *Lane, supra,* 56 Cal.2d 773, 786.) The only reason advanced in support of the instant request was that the attorney's notes might not contain a reference to one of the conversations testified to by the witness, and this fact would support an inference that such conversation never had taken place. In view of the manner in which the information upon which the notes were based was obtained, as well as the manner of its recordation, the probability of their furnishing a reasonable basis for the suggested inference is very unlikely. In the event the notes did not record one of the subject conversations the defendant's purpose in ob-

taining them would not be served unless he were permitted to interrogate the attorney respecting the subject and extent of his interview with the witness. For the policy reasons hereinbefore noted, the problematical value of the information thus developed would not justify the means used to obtain the same. (*Trade Center Properties, Inc.* v. *Superior Court, supra,* 185 Cal.App.2d 409, 411; see *People* v. *Cathey, supra,* 186 Cal.App.2d 217, 221.)

### HEARING OUTSIDE PRESENCE OF JURY

 The trial court conducted a hearing and received evidence, outside the presence of the jury, on the issues raised by the defendant's claim of an illegal search and seizure and by his motion for discovery. He contends that this was error. This contention is without merit. In conducting the subject hearings in the manner indicated, the trial court followed the approved and prescribed procedure in the premises. (*People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469]; *People* v. *Accardy, supra,* 184 Cal.App.2d 1, 4-5.)

### RIGHT OF CONFRONTATION BY WITNESS

 The defendant also contends that his right to be confronted by witnesses testifying against him was denied when the tenant, called as a witness, previously was interviewed by the district attorney in his absence, citing section 1340 of the Penal Code in support of this contention. (See also Pen. Code, § 686.) The Penal Code section relied upon is inapplicable. At the time in question the former tenant was not a witness; was not testifying; and the right upon which the defendant relies as a basis for his objection was not violated. (*People* v. *Taylor,* 159 Cal.App.2d 752, 756 [324 P.2d 715]; *cf. People* v. *Schwarz,* 78 Cal.App. 561, 579 [248 P. 990].)

The judgment convicting the defendant of burglary in the first degree is modified so as to convict him of burglary in the second degree; as modified is affirmed; and the cause is remanded to the trial court for pronouncement of judgment on the conviction of burglary in the second degree as prescribed by law.

Shepard, Acting P. J., concurred.