[Crim. No. 4225. First Dist., Div. One. July 15, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ANDREW WHITE, Defendant and Appellant.

Andrew White, in pro. per., and Donald C. Knutson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Barry L. Bunshoft, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—After a trial by jury, appellant was convicted of burglary in the first degree. (Pen. Code, §§ 459, 460.) He appeals from the judgment.

On March 28, 1962, at approximately 5 p.m., the victim Johnny R. Rin left his room in the Sherman Hotel in Oakland to go to work. He locked his door. When he returned from work the next morning at about 5 a.m. he noticed that there were little pieces of wood chipped off the door and that there was a hole in it next to the lock. Upon entering the room, he saw some of his possessions scattered on the top of his dresser. His wallet which was on top of the dresser was open and his piggy bank with about four dollars in it, which he had left there, was missing.

On the night of March 28, at about 11:15 p.m., Officers Nielsen and DeVanna of the Oakland Police Department entered the Sherman Hotel. The record is not too clear on the point but it is a fair inference that they entered together. They went to the second floor of the building which was the first level of the hotel itself. There Nielsen saw appellant and one Tommie McGhee, codefendant in the court below but not a party to this appeal, coming around a corner of the hallway. They were "trotting or running" and as Officer Nielsen saw them, appellant had grabbed the door of the men's room. Nielsen ordered them to stop and they did. Officer DeVanna, who had started to check other rooms on the floor, heard Nielsen say "Stop" or "Hold it" and came up to the three men.

Nielsen, who knew both defendants, asked McGhee what he was doing in the hotel. McGhee replied that he was looking for one Frank Austin who he thought lived in the hotel. Nielsen saw a long screwdriver protruding from McGhee's overcoat pocket and asked McGhee if he could search him. The latter answered: "Yes, you can. Go ahead." Officer Nielsen then removed from the pocket the screwdriver and a silver table knife. After doing this, he noticed a "bulging under the left coat area." He pulled McGhee's coat back and found a wooden piggy bank under McGhee's armpit. This was the victim's bank. Nielsen asked McGhee where he had obtained the articles. McGhee explained that he had been working on a car earlier that day and had forgotten to remove the tools from his coat; that the piggy bank was his but that he had no key to it; and that he did not know how much money was in the bank.

In the meantime, Officer DeVanna interrogated the appellant. He asked appellant how the latter happened to be there and received an unintelligible reply. He then asked appellant if he could search him to which White replied: "Go right ahead and search." The officer then found an open blade pocketknife in appellant's pocket. It had yellow paint chippings on the blade. He also found in the pocket a driver's license bearing the name of John Rin, the victim.

After both officers had searched and questioned White and McGhee, they proceeded along the corridor from which the defendants had first appeared. In front of room No. 10, which was the victim's room, they found fresh shavings and chips of wood and paint on the floor. The door to the room appeared to have been jimmied. The door jamb itself was broken and there were "big hunks" of wood taken out of both the door and the jamb. The splinters appeared to be fresh. The doors of the other rooms were checked but did not disclose the same condition.

Appellant testified that he left work at 10:45 and arrived at the Sherman Hotel at about 11 p.m.; that he had gone there to see one Frank Austin; that he met the two officers in the hallway; that Nielsen told him to wait while he, Nielsen, went down the hall; that the other officer requested permission to search him but he refused; that Nielsen returned and pushed him up against the wall; that Nielsen again left and again returned holding a piggy bank and a screwdriver and bringing McGhee with him; and that the officers then handcuffed appellant and searched him, the search producing his

wallet, a cigarette case and two half-dollars. Thereupon, according to appellant, the police entered and remained in the victim's room for 20 or 30 minutes. When they came out they had a driver's license which, when questioned, appellant denied owning or ever seeing before. He also denied that he had entered the hotel with McGhee.

On the day of the burglary, appellant had been taking care of the invalid mother of one Jacob Sneed. Sneed, called as a witness for the defense, testified that appellant had come to Sneed's house at 8 a.m. and had left at about 10:30 p.m.

Codefendant McGhee also testified that he went to the hotel alone at about 11:30 p.m.; that he was going to see Frank Austin; that he found the piggy bank and screwdriver in the hallway; and that subsequently without his consent he was searched by Officer Nielsen.

Although appellant claimed at the trial that he had never seen the driver's license before it was shown to him by the police, Officer DeVanna testified that when at the hotel he asked White where the latter had obtained the driver's license, White replied that he had found it a few weeks previously. Inspector Daily of the Oakland Police Department, called in rebuttal, testified that at the city prison on the day following the burglary, he had taken a statement from appellant which the latter thereafter refused to sign. According to the witness, appellant first refused to say where he had obtained the driver's license but later stated that he had found it in the hallway of the Sherman Hotel.

Appellant contends that (1) the court erred in admitting, over his objections, evidence that was the subject of an illegal search and seizure; (2) that the court erred in instructing the jury that, as a matter of law, the evidence presented no question as to the degree of the crime; and (3) that the evidence was insufficient to sustain a conviction of burglary in the first degree.

In support of his first contention, appellant presents the bifurcated argument that the prosecution failed to sustain its burden of showing either (a) proper justification for the arrest and search or (b) a valid consent to the search.[1] Under

---

[1]Both defendants were represented by the public defender in the trial court. Appellant states in his brief that objections made to the introduction of People's Exhibits 2 and 3 (the piggy bank and the driver's license) were summarily overruled. We note that only Exhibit 3 was taken from the person of appellant. Although respondent makes no point of it, the record indicates that Exhibit 2 was received in evidence without

the first part of the argument, appellant urges that it was incumbent upon the prosecution to establish that appellant had been legally arrested before he was searched by Officer DeVanna, that under the evidence the police did not have reasonable cause to make the arrest and search, and that the arrest and search could not be justified by what the search turned up. The tenor of this argument is that the arrest preceded the search. The Attorney General on the other hand contends that the search was based upon appellant's consent, that such was the prosecution's theory in the trial court, and that reasonable cause is not here an issue. We think this position has merit. As we shall explain, we have concluded that the search of appellant was legal because validly consented to and that it is unnecessary for us to discuss appellant's claim that there was no reasonable cause for an arrest or search.

██ Where one freely consents to a search of his person or voluntarily produces evidence against himself, "his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable." (*People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].) It is therefore not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when consent to the search is given before the officer makes the arrest. (*People* v. *Michael, supra; People* v. *Burke* (1956) 47 Cal.2d 45, 49 [301 P.2d 241]; *People* v. *Silvers* (1961) 196 Cal.App.2d 331, 335 [16 Cal.Rptr. 489]; *People* v. *Valdez* (1961) 188 Cal.App.2d 750, 755 [10 Cal. Rptr. 664].) "A search or seizure made pursuant to a valid consent before any illegal police conduct occurs is obviously not a product of illegal conduct." (*People* v. *Haven* (1963) 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].)

██ "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." (*People* v. *Michael, supra,* 45 Cal.2d 751, 753; *People* v. *Burke, supra; People* v. *Gorg* (1955) 45 Cal.2d 776, 782 [291 P.2d 469];

objection. With this exception, it appears that the public defender preserved a "continuing" objection to the introduction of any evidence claimed to have been illegally seized and during the course of the defense moved on behalf of both defendants to strike the testimony of both officers and to exclude all evidence received by the search. The objection to the introduction of the driver's license taken from appellant was overruled and the above motion to strike and exclude was denied.

*People* v. *Arketa* (1962) 207 Cal.App.2d 194, 198 [24 Cal. Rptr. 257].) Although each case must be decided on its own facts, the trial court's determination that the defendant consented to the search has been upheld where, in response to a request by the police to search the defendant's person or, home, the defendant told the police to "go ahead" or used substantially equivalent language. (*People* v. *Burke, supra,* 47 Cal.2d 45, 48; *People* v. *Arketa, supra,* 207 Cal.App.2d 194, 196.; *People* v. *Campos* (1960) 184 Cal.App.2d 489, 493 [7 Cal.Rptr. 513]; *People* v. *Weire* (1961) 198 Cal.App.2d 138, 141 [17 Cal.Rptr. 659]; *People* v. *McGhee* (1961) 196 Cal.App.2d 458, 459 [16 Cal.Rptr. 625].)

In the instant case, the testimony bearing upon the issue of appellant's consent to the search is in sharp conflict. Officer DeVanna testified that appellant consented to the search.[2] Appellant testified that when the officer asked permission to search him he refused and that he did not consent to the search. The testimony of the officer and appellant is also conflicting in respect to the surrounding circumstances of the search. Although the record does not clearly disclose exactly when appellant was placed under arrest, it can be reasonably inferred from the testimony of both officers that appellant and his codefendant McGhee were first searched with their consent and then, after the articles uncovered by the search pointed to their probable connection with the breaking into Rin's room, placed under arrest. Appellant on the other hand testified that Officer Nielsen pushed him against the wall, "patted" the outside of his pockets but did not then go through them, and then within a short time took appellant and McGhee to the front of the building, where the officers handcuffed appellant and searched him. A reasonable construction of appellant's testimony is that he was placed under arrest first and then searched.

The above conflict was resolved by the trial court which believed and accepted the testimony of the police officers. Sufficient evidence thus supports the trial court's determination that appellant's consent was freely given (*People* v. *Arketa, supra,* 207 Cal.App.2d 194, 198; *People* v. *Cunningham* (1961) 188 Cal.App.2d 606, 609 [10 Cal.Rptr. 604]) and that the search pursuant thereto was made before the police

[2]The officer testified: "Q. Did you have a conversation with him when you—— or after you approached him? A. I asked him how he happened to be in the hotel, and he just mumbled, he didn't come up with any clear answer. I then asked him if I could search his person. Q. Did he reply? A. He gestured, he said, 'Go right ahead and search.' "

arrested appellant, thus eliminating any claim of illegal police conduct in respect to the arrest. (*People* v. *Haven, supra,* 59 Cal.2d 713, 718-719.)

We take up appellant's second contention. As pointed out, appellant was convicted of burglary of the first degree. Section 460 of the Penal Code provides in relevant part: "1. Every burglary of an inhabited dwelling house . . . or building committed in the nighttime . . . is burglary of the first degree. 2. All other kinds of burglary are of the second degree." Section 463 of the Penal Code provides: "The phrase 'night-time,' as used in this chapter, means the period between sunset and sunrise."

The trial judge gave the following instruction: "There are two degrees of burglary; however, the evidence in this case is such that as a matter of law it presents no question as to the degree of crime charged. And I instruct you that you must find the defendants or either of them either not guilty of the offense charged or guilty of burglary in the first degree."

Appellant argues that the evidence in the case only shows that the victim's room was entered sometime between 5 p.m. and 11:30 p.m. on March 28th, that the People offered no evidence to show the time of entry and that whether the room was entered at "nighttime" so as to constitute burglary of the first degree was a question of fact for the jury. It is therefore contended that the court erred in failing to instruct on the issue of the time of entry and in removing such issue from the jury by giving the foregoing instruction.[3]

In *People* v. *Montalbano* (1956) 146 Cal.App.2d 624, 625 [304 P.2d 36], it was said: "It is well settled that where a crime is divided into degrees the trial court may properly instruct the jury that if they find the defendant guilty they must find him guilty of the higher degree in any case where *under the uncontradicted evidence* he is guilty of the higher degree if guilty at all. The Supreme Court thus expressed the rule in a homicide case, *People* v. *Alcalde,* 24 Cal.2d 177, 188 [148 P.2d 627] :

" 'It is proper to refuse to give an instruction as to a lesser degree, or as to an included lesser offense, if the evidence warrants only a verdict of first degree murder in the event the accused is guilty at all.' " (Italics added.)[4]

[3]Both parties are in agreement that the sun set on March 28, 1962, at 6:29 p.m.

[4]In *Montalbano* the court noted that the rule stated by it had been applied to other burglary cases, namely *People* v. *Kruger* (1893) 100 Cal.

The uncontradicted evidence in the record shows that if appellant committed the burglary at all, he did so in the nighttime. Appellant testified that he had been at work and did not leave work until 10:45. His employer, Sneed, testified that appellant came to work at 8 a.m. and left at 10:30 p.m. Appellant testified that he did not arrive at the Sherman Hotel until 11 p.m. The police officers arrived at the hotel at 11:15 and shortly thereafter came upon appellant in the hallway. There is therefore nothing in the record from which the jury could have inferred that appellant, if he committed the crime at all, did *not* commit it in the nighttime.

Finally appellant argues ''that the facts of the present case would not support a conclusion that the burglary occurred at 'nighttime' even if that issue had been presented to the jury. . . .'' This argument is answered by what we have said in respect to the preceding contention. The jury believed on substantial evidence that appellant committed the burglary. Appellant does not here contend that the evidence is insufficient to sustain his conviction of burglary in *either* the first or second degrees. His *sole* claim is that it is insufficient to sustain a conviction of burglary in the *first* degree. As we have pointed out, the jury having found the appellant guilty, under the uncontradicted evidence, they could only conclude that he committed the act at nighttime and was guilty of the higher degree of the crime.

Appellant further contends that ''[u]nless there is proof beyond a reasonable doubt that entry actually occurred at nighttime, conviction can be had only of the lesser offense, i.e., burglary of the second degree.'' In support of this contention appellant cites *People* v. *Gilbert* (1961) 188 Cal. App.2d 723 [10 Cal.Rptr. 799]; *People* v. *Wozniak* (1959) 167 Cal.App.2d 448 [334 P.2d 689]; *People* v. *Golembiewski* (1938) 25 Cal.App.2d 115 [76 P.2d 717]; *People* v. *Richardson* (1935) 10 Cal.App.2d 379 [51 P.2d 1114]; *People* v. *Clements* (1935) 6 Cal.App.2d 582 [44 P.2d 657].

Such contention cannot properly be made here. It is the trier of fact, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. ''The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt.'' (*People* v. *Daugherty* (1953) 40 Cal.2d 876, 885 [256 P.2d

523 [35 P. 88]; *People* v. *Tolli* (1928) 93 Cal.App. 62 [268 P. 1078]; *People* v. *O'Brien* (1921) 53 Cal.App. 754 [200 P. 766]; *People* v. *Howard* (1918) 39 Cal.App. 216 [178 P. 865].

911], cert. denied, 346 U.S. 827 [74 S.Ct. 47, 98 L.Ed. 352] ; *People* v. *Robillard* (1960) 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086], cert. denied, 365 U.S. 886 [81 S.Ct. 1043, 6 L.Ed.2d 199] ; *People* v. *Redrick* (1961) 55 Cal.2d 282, 289 [10 Cal.Rptr. 823, 359 P.2d 255].)

As we have pointed out above, the uncontradicted evidence in the record shows that if appellant committed the burglary at all, he did so in the nighttime. Conviction of first degree burglary is therefore supported by substantial evidence. Appellant does not challenge the sufficiency of the evidence to support the verdict in other respects. Indeed he could not successfully do so since there is ample evidence in the record to connect him with the burglary.

The five cases cited by appellant are distinguishable from the case before us and afford appellant no support. In *People* v. *Gilbert, supra,* 188 Cal.App.2d 723, the court directed that a conviction of first degree burglary be modified to that of second degree burglary because the evidence showed that the defendant had been in the residence for some time before the police came and there was no reasonable basis for the conclusion that he entered after sunset. In *People* v. *Wozniak, supra,* 167 Cal.App.2d 448, conviction of first degree burglary was reduced to that of second degree where the evidence only showed that the burglary occurred between 6:30 p.m. and 7:15 a.m. and there was nothing else in the record to indicate when the burglary occurred or to connect defendant with a burglary committed before sunrise. In *People* v. *Golembiewski, supra,* 25 Cal.App.2d 115, conviction of first degree burglary was modified to second degree burglary because, although the evidence showed that a burglary was committed and that the defendant committed it, there was neither direct nor circumstantial evidence that it was committed at nighttime. *People* v. *Richardson, supra,* 10 Cal.App.2d 379 and *People* v. *Clements, supra,* 6 Cal.App.2d 582 presented similar situations. In each, although the evidence showed the commission of the burglary by the respective defendant, no evidence showed that he committed the burglary in the nighttime.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied August 1, 1963, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1963.