[Crim. No. 8862. Second Dist., Div. Two. Aug. 27, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. MAURICE ERNEST BOWENS, Defendant and Appellant.

John H. Marshall for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of violating section 11530, Health and Safety Code (possession of marijuana). He was also charged with a prior conviction for violating section 11500, Health and Safety Code. The prior conviction was found to be true. Defendant has appealed from the judgment.

On August 2, 1962, at approximately 8:50 p.m., Officer Ward of the Wilshire Division of the Los Angeles Police Department, observed defendant seated in a 1962 Chevrolet

that was parked in front of 3058 West 12th Street. This was the address of the apartment house in which defendant lived. The car partially blocked the driveway and the rear of the vehicle extended out into the traffic lane about three or four feet. This 1962 car bore a 1956 Delaware dealer's license plate but without any current tab.

Defendant was in the right front seat of the Chevrolet. A man named Robinson was behind the steering wheel.

Officer Ward had arrested defendant approximately six weeks prior to that time for possession of narcotics. The officer had found him in possession of marijuana. On that occasion the officer had been in defendant's apartment, No. 202 at the above address.

Officer Ward was driving the police car. His partner was Officer Kilgo. The police car stopped alongside the Chevrolet. Ward got out, walked to the rear and approached the right-hand side of the Chevrolet. The officer identified himself. Defendant immediately emerged from the Chevrolet. The officer talked to him "regarding the prior arrest and whether he was still using or carrying narcotics." Defendant said, "No." The officer asked him: "Do you mind if I check you?" The officer also indicated he was interested "to see if he had any marks on him." Defendant apparently did not make any audible reply but immediately "put his arms out sideways from himself—not straight up—extended sideways and a little above horizontal." The officer first patted or checked his lower pockets from the outside. When the officer did that, defendant did not make any objection or say anything. The officer then patted his upper pockets. As to this incident the officer testified: "After feeling something in his upper left coat pocket, I reached in there." Defendant still did not say anything or make any objection. The officer removed two hand-rolled cigarettes from this pocket. They appeared to be marijuana cigarettes and subsequent analysis established that they were. Defendant acknowledged that the cigarettes belonged to him but denied that he was selling marijuana. He claimed that he bought them for his own use. Defendant was thereupon arrested.

A few minutes later the officer inquired of defendant if he still lived in the same apartment, indicating the building at that address. Defendant replied in the affirmative. He replied, however, in the negative to an inquiry as to whether or not he had any narcotics in his apartment. The officer asked him "if he minded if we took a look, and he said no, and

then he agreed to accompany us up there.'' They were accompanied by Officer Kilgo and the other man in the Chevrolet. Upon their arrival at the apartment, defendant opened the door. Officer Kilgo searched the apartment and found two other marijuana cigarettes. Defendant stated those were his also.

The officers did not have either a warrant for defendant's arrest or a search warrant for his apartment.

Defendant testified that when he got out of the car the officer told him to ''roll up your sleeves'', and as he did that, the officer patted him. During this procedure defendant testified, ''I didn't say anything.'' Defendant denied that he gave consent or permission for the officers to search his apartment.

 Defendant seeks a reversal on the theory that the search was without reasonable or probable cause and that the contraband therefore was not admissible in evidence. In making this contention defendant misconceives the critical issue; viz., did he consent to the search?

The car in which defendant was sitting when the officers came along was a 1962 model bearing 1956 out-of-state dealer plates without a current tab. It was illegally parked, and in fact in such a fashion as to constitute a likely hazard to passing traffic. Officer Ward recognized defendant whom he had arrested some six weeks previously for possession of narcotics. These circumstances called for an investigation by the police for the condition of the license plate would suggest the possibility that the car had been stolen.

Having so recently arrested defendant for possession of marijuana and no doubt being aware of his previous narcotics conviction, it was natural for the officer to talk to him about his prior arrest and inquire ''whether he was still using or carrying narcotics.'' In such circumstances it is understandable that the officer was unwilling to give full credence to defendant's statement that he was not engaged in narcotic activity. Hence his inquiry relative to checking defendant and his desire to see if he had any marks on him.

Although it does not appear that defendant made any audible response to the officer's inquiries, he nevertheless unmistakably indicated his consent to the officer checking him, and also looking to see if he had any needle marks on him, by extending his arms. This was in effect an invitation to the officer to proceed. The officer could reasonably so interpret his acts and conduct, and proceeded accordingly. And the.

trial court could reasonably draw the inference that defendant consented to the officer's request. The defendant neither said nor did anything indicating that he did not consent to the officer's checking him and examining him for needle marks.

The defendant, however, denied that he consented to the search of his apartment. But the court determined on conflicting evidence that he did consent to its search. The officer's testimony supports this implied finding. (*People* v. *Campos*, 184 Cal.App.2d 489, 494 [7 Cal.Rptr. 513]; *People* v. *Melody*, 164 Cal.App.2d 728, 734 [331 P.2d 72].)

The case was presented to the trial court by the People on the theory of consent rather than on the theory of reasonable or probable cause to search. Whether or not defendant gave consent was a question of fact to be determined in the light of all the facts and circumstances. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]; *People* v. *Campos*, *supra*.) Taking into account the officer's testimony, the defendant's acts and behavior, and the reasonable inferences to be drawn therefrom, and the credibility of the witnesses, we are of the opinion that the evidence was sufficient to support the implied finding of the trial judge that consent was given.

When one consents to a search of his person "his constitutional rights are not violated and any search or taking of evidence pursuant to his consent is not unreasonable." (*People* v. *Michael*, *supra*.) It is therefore not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when consent to the search is given, as here, before the officer makes the arrest. (*People* v. *White*, 218 Cal.App.2d 267, 271 [32 Cal.Rptr. 322].) As pointed out in *People* v. *Haven*, 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927], "A search or seizure made pursuant to a valid consent before any illegal police conduct occurs is obviously not a product of illegal conduct."

Since the search of defendant's person and apartment was with his consent the contraband thus recovered was legally obtained and therefore admissible in evidence.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.