**Georgia Inez HOLZHEY,**

v.

**UNITED STATES of America.**
**No. 14948.**

United States Court of Appeals
Fifth Circuit.
June 30, 1955.

**824**

P. Donald DeHoff, Marie C. Broetzman, Jacksonville, Fla., for appellant.

Thomas A. Larkin, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, Circuit Judge, and DAWKINS and SIMPSON, District Judges.

DAWKINS, District Judge.

An indictment charged appellant with receiving and concealing, with intent to convert to her own use, certain property of the United States, "knowing same to have been embezzled and stolen", in violation of 18 U.S.C. § 641. The property in question [1] bore markings and numbers similar to those used on such property by the Department of the Navy at the Jacksonville Naval Air Station and was seized during the search of the residence of Mr. and Mrs. Williams, appellant's son-in-law and daughter. Shortly after the seizure of the property, a signed statement amounting to a confession was taken from appellant at the air station (where she worked), and it was introduced into the evidence at the trial. Appellant's estranged husband, federal agents and civilian employees of the air station testified for the Government, and the jury returned a verdict of guilty. Appellant was sentenced to six months in prison.

By a preliminary motion to suppress and an objection to the introduction of the evidence secured thereby, appellant contended below that the search was violative of the Fourth Amendment. She also objected to the introduction of her statement for the reason that it was obtained by psychological coercion while she was being illegally detained. Finally, she moved for acquittal on the ground that the evidence was insufficient either to establish that the property belonged to the United States and was stolen or embezzled, to prove the value of the property, or to show the required intent. Here she assigns as errors the trial court's adverse rulings on these issues.

The record convinces us that appellant was not being "detained", illegally or otherwise, when her statement was taken and that it was given by her volun-

---

1. Anti-freeze, electric drills, pliers, paint brushes and other such small tools and devices.

tarily in an attempt to explain her possession of the property. The agent merely went to her place of employment, told her the property had been found and asked if she wanted to make a statement. The statement itself discloses that she was informed of her rights as to self-incrimination; and there is no evidence indicating physical or psychological coercion. The statement was properly admitted. However, the objection to the admissibility of the seized property raises a serious question requiring full discussion.

Appellant's motion to suppress the evidence contended primarily that she lived in the premises searched and paid rent to her daughter, and that entry thereto and search thereof without a search warrant and without her consent was not lawful. No action was taken on this motion, the trial court reserving the matter to be passed upon at the trial. When the Government attempted to introduce the evidence, appellant objected for the same reasons and the trial judge allowed a full hearing related to the legality of the search and seizure. The evidence taken during this hearing may be summarized as follows:

Acting upon information received from an investigator at the air station, agents of the Federal Bureau of Investigation called upon Mr. and Mrs. Williams at their place of employment and sought permission to search their residence, which was given by the signing of a written waiver previously prepared by the agents. Accompanied by Mr. and Mrs. Williams, they drove to the residence which they discovered was a garage apartment, with the Williams living quarters upstairs and a garage space of approximately equal area downstairs. At the request of the agents, Mrs. Williams opened the garage doors, and Mr. Williams removed the automobile parked therein. There was an area to the right of the car in which cartons, cabinets and other items were stored, from which the agents obtained the property in question. One of the agents testified that Mrs. Williams had previously told him appellant lived at her residence part of the time, but he thought she was referring to the living quarters upstairs. All of the agents stated they were never told by Mr. or Mrs. Williams that appellant resided in the garage area, that they saw no bed, that they saw nothing to indicate the area was being used as living quarters. There were, however, conflicts in their testimony concerning the physical description and contents of the area.

Appellant testified that she had separated from her husband and lived in the garage area of the Williams residence from that time until her daughter removed to Michigan several months after the search. She said she stayed there every night, sleeping upon an iron bed, or cot, which was in the area on the day of the search, but had her meals out because of the unusual hours her job required her to keep. She described in considerable detail the contents of the area, mentioning many items specifically denied by the agents, and stated she paid rent to her daughter of $40 per month when she could afford to do so. She stated that there were several locked containers belonging to her in the garage and that a lock on a cabinet owned by her had been forced open and property taken therefrom by the agents.

Mrs. Williams corroborated her mother's testimony as to her residence in the garage area and the contents thereof, but stated that the rent payments were $10 per month, made when appellant desired. She testified that she had told the agents her mother lived in the downstairs area and that she specifically told them the locked boxes and cabinet belonged to appellant. According to her testimony, she suggested that the agents contact appellant before opening the boxes and cabinets and requested that she be allowed to call her mother.

One of the agents admitted questioning Mr. and Mrs. Williams as to the contents and ownership of the locked cabinet. According to his testimony, Mrs. Williams stated she had never seen the cabinet and had no idea who owned it but expressed the thought it might be

appellant's. Another agent testified in connection with the cabinet and said it contained "a great deal of the property that we removed from the scene," but he did not identify the particular items taken therefrom.

At the close of this evidence the trial court ruled that "no constitutional immunity of the defendant here has been invaded by the search." He made no specific findings of fact, but we may safely assume he concluded from the conflicting testimony that appellant did not reside in or rent the garage area. His ruling was necessarily based upon a finding that Mr. and Mrs. Williams had exclusive control and possession of that part of the premises. If the issue raised could be fully resolved by such a limited finding, we should be obliged to affirm, for there is ample evidence to support that conclusion.

However, the uncontradicted testimony of appellant and Mrs. Williams, coupled with the admissions of the agents, undeniably shows an entry and search of a locked cabinet not owned by Mrs. Williams, from which part of the evidence was taken. Even assuming, as implied by the agent's testimony, that the cabinet was not identified unequivocally as being the property of appellant, certainly the agents were put to some further inquiry as to its ownership if Mrs. Williams made the statement attributed to her. At the very least, they knew Mrs. Williams was disclaiming ownership of or authority over the cabinet. Viewing the bare evidence alone, we find it apparent that the agents entered and searched a locked cabinet owned by a person unknown, but present in the residence of persons who consented to the search of their home. Adding the inferences which should fairly be drawn from the evidence, we think it clearly shown that the cabinet was known to be the property of appellant when entered and searched. Can it be said, then, that the general consent given by Mr. and Mrs. Williams authorized an entry and search of appellant's locked personal effects?

There is authority for the proposition, argued by the Government, that the consent of the owner of the premises validates the search and seizure of the property of another found thereon, when the person whose property was seized had no superior legal right of possession to or dominion over the premises searched. See, for example, Calhoun v. United States, 5 Cir., 172 F.2d 457; Cutting v. United States, 9 Cir., 169 F.2d 951. However, in such cases, it does not affirmatively appear that after gaining access to the premises through the consent of the owner, the searching officers broke into the locked personal effects of another.

There is also authority to the effect that a person not in possession of the property searched or seized has no standing to question the legality of the search. United States v. Walker, 2 Cir., 190 F.2d 481, and authorities there cited. Compare the authorities cited in the annotation in 31 A.L.R.2d 1079.

We think the instant case presents an issue which cannot be resolved by resorting to such generalities. The problem involved here is more analagous to the factual situation presented to the Court of Appeals for the District of Columbia in United States v. Blok, 88 U. S.App.D.C. 326, 188 F.2d 1019, wherein the search of an employee's desk with the consent of the employer was invalidated. After a careful review of the authorities, that Court held the employee's superiors could not reasonably search her desk for things which had no connection with the work of the office and that their consent could not make the search by officers reasonable. We think the same reasoning applies here with respect to appellant's locked personal effects, and that the consent of the Williamses to the search of their premises did not and could not be extended to authorize the forceable entry and search of appellant's property.

No crime was being perpetrated in the presence of the agents, and there is nothing in the record to indicate any previous knowledge on their part that a

crime had been committed. It is rather clear that the officers were engaged in a more or less exploratory search. If not, no reason appears for their not having obtained a search warrant or contacted appellant to seek her consent after they came upon the locked containers in the Williams home. We think the search made here was unreasonable, prohibited by the Fourth Amendment, and that the evidence obtained thereby should not have been admitted.

There being nothing in the record from which we can determine what specific items were removed from the locked personal effects of appellant, the conviction is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.