[Crim. No. 7406. Second Dist., Div. Two. Jan. 27, 1961.]

THE PEOPLE, Respondent, v. WILLIAM CUNNINGHAM, Appellant.

Gerald Levie for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

FOX, P. J.—Defendant was convicted on seven counts of possession of a narcotic in violation of section 11500, Health and Safety Code. It was also determined that defendant had suffered two prior felony convictions, one of which was for possession of narcotics. He has appealed from the judgment.

At approximately 2 p. m. on May 5, 1960, Officer Buckner, of the Los Angeles Police Department, Narcotic Division, went to a house at 841 West 75th Street with two other officers. Officer Buckner testified that when he stepped upon the porch and knocked he observed a woman, whom he later identified as Mrs. Rene Schmidt, sitting in a chair in the front room facing him. The door was open but there was a screen door that was hooked. Mrs. Schmidt inquired, "Who is it?" The officer replied that he was a police officer making a narcotic investigation and would like to talk to her. She stated that "she did not feel very well." The officer then told her he would appreciate talking to her for just a few minutes. The officer testified that "at that time she got up and came over to the front door and unhooked the screen door and invited us into the front room." When the door was opened Mrs. Schmidt's little dog ran out of the house. Buckner's partner retrieved the dog and brought it back into the house. "After letting us in," according to Buckner's testimony, he and Mrs. Schmidt had a conversation in which he asked her who she was living with, and "she stated she was

living with William . . ." (Cunningham). Buckner then "asked her if she knew that William Cunningham was on parole" and she replied, "Yes." She explained, however, that he had told her he "wasn't fooling around with any narcotics now. . . ." She also informed the officer that he occupied the back bedroom. Buckner then said, "You don't mind if we look around?" She replied, "No." About five minutes later Mrs. Schmidt went to the entrance of the kitchen from the front room and said to the officer, "Aren't you supposed to have a search warrant?" The officer responded, "Normally, yes, but you recall you gave us permission to search." She then went back and sat down and did not say anything. Approximately three minutes later Buckner was called to defendant's bedroom by his partner, who had found three shoe boxes in a space above the closet, each of which contained a large quantity of each of the drugs named in the information. The officers then waited until defendant arrived, at approximately 4 p. m., at which time he was arrested. Officer Buckner then showed defendant the narcotics that had been found in his room and asked him whether they belonged to him, and he answered "Yes." In response to an inquiry as to where he obtained the narcotics defendant stated that he had "pulled a burglary" in East Los Angeles of a pharmacy and had taken them from it the night before. He stated he brought the narcotics home and put them up in the closet during the early morning hours. The officer observed numerous marks on defendant's arms indicating he was a user. He told the officer he was using narcotics costing in excess of $100 a day.

Defendant's counsel made appropriate objections to the introduction in evidence of the contraband on the ground that it was the product of an illegal search and seizure, and to the receipt in evidence of defendant's admissions on the ground that the corpus delicti had not been sufficiently established. The court overruled the objections and received the proffered evidence.

Mrs. Schmidt testified that the police informed her that they wanted to talk to her but did not mention narcotics; that she did not feel well, and did not feel like talking to anyone. She denied that she opened the screen door or invited the officers in. Instead, according to her, the police pulled the door ajar just enough to allow her little dog to escape from the house; that the police retrieved the dog and brought him back inside to her. She further related that after the officers entered the

living room they inquired who lived there besides herself, and when she informed them that the defendant lived there, they further inquired where his room was, and when she pointed to the rear bedroom, they started toward it. According to her story, it was at this time that she asked them: "Do you have a search warrant?" She says that one of the officers replied: "We don't need one, we are already in." Mrs. Schmidt then sat down without saying or doing anything further to indicate disapproval of the search. She denied, however, that she had said to the police at any time that she did not object to their looking around.

In seeking a reversal defendant makes two basic contentions: (1) that the officers were guilty of an unlawful search and seizure, hence the contraband they found was inadmissible in evidence; and (2) that the corpus delicti was not established independently of defendant's alleged admissions. The People, on the contrary, contend (1) that the police had proper authority to enter and search the premises in question, and (2) that the corpus delicti was sufficiently established to justify the admission in evidence of the incriminating statements that defendant made immediately following his arrest. We are persuaded that the position of the People is correct.

The question as to whether officers have consent to enter and search premises is one of fact (*People* v. *Gorg,* 45 Cal.2d 776, 782, 783 [291 P.2d 469]; *People* v. *Neal,* 181 Cal. App.2d 304 [5 Cal.Rptr. 241]) as is also the question as to whether that consent was voluntarily given or was in submission to an express or implied assertion of authority, and such question of fact is to be determined in the light of all the circumstances. (*People* v. *Burke,* 47 Cal.2d 45, 49 [301 P.2d 241]; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) Of course, if there is substantial evidence to support the trial court's finding, it cannot be upset on appeal. In making these factual determinations it must be borne in mind that the trial judge passes on the credibility of the witnesses and determines the weight to which their testimony is entitled, and that in evaluating such testimony he is entitled to take into account the bias and prejudice of the witness, if any, and his interest in the outcome of the case.

It is implicit in the trial judge's ruling that he believed the testimony of the officer that Mrs. Schmidt, who lived there and who was in apparent control and possession of the house, invited the officers in, and did not believe her contrary testimony, or that the officers gained admission

through a subterfuge by catching her dog when it ran out and bringing it back into the house to her. The case of *People* v. *Neal, supra,* is strikingly similar to the one at bar on the points here at issue. In the Neal case, according to the testimony of the police, the defendant opened the door of her apartment in response to the officers' ringing the door bell. When they showed her their police badges and said they would like to talk to her she replied, ''OK,'' stepped back and opened the door wider. In her testimony the defendant claimed she had asked the police several times whether they had a search warrant. On these facts it was held that the trial court was justified in drawing the inference that such action on the defendant's part was an invitation as well as consent to enter and that the entry had not been the product of trickery or subterfuge.

What has been said with respect to the entry of the officers applies with equal force to the question of her consent that they could search the premises. She didn't mind. They could ''go right ahead.'' Her later inquiry about a search warrant and her subsequent quiescent attitude did not, as a matter of law, require the trial court to draw an inference that she had withdrawn her consent to the search. A contrary inference was entirely reasonable, and it is apparent that the trial judge did draw such contrary inference. This was his prerogative.

Defendant cites and relies on *Amos* v. *United States,* 255 U.S. 313 [41 S.Ct. 266, 65 L.Ed. 654], and *Johnson* v. *United States,* 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436], in support of his argument that Mrs. Schmidt's consent was not voluntary but was the result of implied coercion. These cases are not here controlling. (See discussion of these cases in *People* v. *Michael, supra,* p. 753, and *People* v. *Burke, supra,* p. 49.)

Defendant misconceives the law *re* the establishment of the corpus delicti in arguing that it was not established independently of his admissions following his arrest. The corpus delicti is established by proving that a crime has been committed. In making such proof, it is not necessary to prove that the defendant was connected with the commission of the crime. (*People* v. *Sterling,* 154 Cal.App.2d 401, 404 [316 P.2d 405].)

 In order to make a prima facie showing of the corpus delicti in a case charging illegal possession of a narcotic, all that is necessary is to show a reasonable probability of the unlawful possession of the narcotics by someone. It is not necessary to prove a particular defendant's connection with

the narcotics in order to establish the essential elements to prove the corpus delicti. (*People* v. *Walters,* 148 Cal.App.2d 426, 431 [306 P.2d 606].) In *People* v. *Ruiz,* 146 Cal.App.2d 630 [304 P.2d 175] (a case involving alleged illegal possession of a narcotic), it was argued that the confession of the defendant had been improperly received in evidence on the theory that the corpus delicti had not been sufficiently established. The court held, however, (p. 634) that all that was required was prima facie proof of illegal possession; that it was not necessary to show a particular defendant's connection with the crime before his confession could be introduced in evidence.

The evidence in the instant case showed that a large quantity of various narcotics was illegally possessed by someone using or having access to defendant's bedroom. This established the corpus delicti of the crime of possession of narcotics and was sufficient to justify the admission in evidence of defendant's statements following his arrest that these narcotics were his.

The judgment is affirmed.

Ashburn, J., and McMurray, J., pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 22, 1961.

---

*Assigned by Chairman of Judicial Council.