**William CUNNINGHAM, Appellant,**

v.

**Robert A. HEINZE, Warden, California
State Penitentiary, Appellee.**

**No. 19344.**

United States Court of Appeals
Ninth Circuit.

Oct. 18, 1965.

Rehearing Denied Nov. 24, 1965.

Thompson, J., dissented in part.

Robert J. Henry, San Francisco, Cal., for appellant.

Thomas C. Lynch, Atty. Gen., of Cal., Doris H. Maier, Asst. Atty. Gen., for appellee.

Before POPE and BROWNING, Circuit Judges, and THOMPSON, District Judge.

BROWNING, Circuit Judge:

Appellant was convicted of possessing narcotics in violation of state law. He filed a petition for habeas corpus in the United States District Court for the Northern District of California, alleging that his conviction was based upon evidence seized in violation of the Fourteenth Amendment. The district court dismissed the petition without an evidentiary hearing.

I

■■ Appellant's timely petition to the United States Supreme Court for a writ of certiorari to the California Supreme Court for direct review of the judgment of conviction was denied after the decision of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), overruling Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Cunningham v. California, 368 U.S. 933, 82 S.Ct. 370, 7 L.Ed.2d 195 (1961). The Mapp exclusionary rule applies to cases in which the state court judgment was not final when Mapp was annouced because in those cases the state could not justifiably have acted in reliance upon a judgment not yet final. The rule of Mapp therefore applies to appellant's case. Linkletter v. Walker, 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

■ We cannot accept appellee's suggestion that we should attach significance

to the fact that the Supreme Court denied appellant's petition for certiorari (Cunningham v. State of California, 368 U.S. 933, 82 S.Ct. 370, 7 L.Ed.2d 195, (1961)) while granting review and reversing in other cases (Ker v. State of California, 368 U.S. 974, 82 S.Ct. 480, 7 L.Ed.2d 437 (1962), 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Fahy v. State of Connecticut, 372 U.S. 928, 83 S.Ct. 871, 9 L.Ed.2d 732 (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Stoner v. California, 374 U.S. 826, 83 S.Ct. 1880, 10 L.Ed.2d 1050 (1963), 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964)) in which violation of the *Mapp* rule was urged. See Brown v. Allen, 344 U.S. 443, 489–497, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

## II

At appellant's trial the state introduced in evidence three shoe boxes containing narcotics found by officers on a shelf in a bedroom closet in a private home. One of the officers testified that a Mrs. Schmidt, who was in the front room of the house when the officers arrived, invited them to enter and assented to the search.

Appellant presents two basic contentions: First, that Mrs. Schmidt did not verbally consent to the search, and, if she did, her consent did not meet federal standards for determining whether waiver of a constitutional right has occurred; and, second, that the bedroom closet was part of appellant's personal living quarters and contained his personal effects, and Mrs. Schmidt had no authority to waive his constitutional right to privacy.

1. *Consent and waiver.* Appellant alleges that Mrs. Schmidt did not verbally assent either to the officers' entry into the house or their search of the bedroom closet. Appellant also alleges that even if Mrs. Schmidt did assent, she did not know she could refuse to permit a search without a warrant, and that if she had known of her right she would not have waived it willingly. Appellant offers Mrs. Schmidt's affidavit supporting these allegations. Appellant also alleges that Mrs. Schmidt, a crippled woman, was alone in the house; that three men, strangers to her, came to her door, identified themselves as police officers, and announced they were making a narcotics investigation; that the men opened the unlatched screen door and entered the house without consent; that they questioned her about appellant's involvement with narcotics, and asked to be directed to his room; and that she inquired if they had a search warrant, and was told they didn't need one because they were already in the house.

These allegations raise a substantial question, involving petitioner's constitutional rights, as to whether Mrs. Schmidt verbally consented to the entry and search, and whether verbal assent if given constituted an "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). See Cipres v. United States, 343 F.2d 95, 97–98 (9th Cir. 1965), and cases cited. The district court is therefore required to hold an evidentiary hearing "unless the state-court trier of fact has after a full hearing reliably found the relevant facts." Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963).

The state trial court did not expressly find either that Mrs. Schmidt verbally consented to the search, or that the circumstances surrounding the asserted consent were not as appellant alleges. Nor did the state court impliedly make such findings. The state's attorney supported the lawfulness of the search on a number of grounds, including the theory that the search was incident to an arrest supported by probable cause. The state court gave no reasons for its ruling admitting the evidence. Therefore, it is possible that the state court found appellant's factual allegations to be true (or did not reach the factual issues), but concluded that the search was nonetheless valid on this alternate ground. Townsend v. Sain, supra, 372 U.S. at 313–314, 320, 83 S.Ct. 745.

**4**

■ Moreover, the state's attorney argued to the state trial court (undoubtedly on the basis of Wolf v. Colorado, supra) that appellant's reliance upon Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921), and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), was misplaced because "federal cases are not controlling on the question of admissibility of evidence on search and seizure in California." The state trial court's failure to articulate the basis for its decision makes it impossible to determine whether it adopted this erroneous, pre-Mapp view of the law. "Since the decision of the state trier of fact may rest upon an error of law rather than an adverse determination of the facts", the state court's findings cannot be reconstructed, and "a hearing is compelled to ascertain the facts." Townsend v. Sain, supra, 372 U.S. at 314, 83 S.Ct. at 758.[1]

■ 2. *Authority to waive.* An evidentiary hearing must also be held to determine whether appellant had a right to privacy, and, if so, whether Mrs. Schmidt had authority to waive it. There is no contention that the state court took evidence or made findings on these questions.[2]

Appellant alleges that the rear bedroom and closet were his private living quarters, containing his private effects—that Mrs. Schmidt occupied her own bedroom in another part of the house. He alleges that the search was directed against him and his quarters and effects, and not against Mrs. Schmidt—that the officers went to the house to investigate appellant and asked to be directed to "his bedroom." Appellant alleges that he did not authorize Mrs. Schmidt, or anyone else, to search his personal quarters or his personal effects.

These allegations raise a substantial issue. Living quarters and effects no more private than these allegedly were have been protected from unreasonable search and seizure. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Reeves v. Warden, 346 F.2d 915, 924–925 (4th Cir. 1965); Holzhey v. United States, 223 F.2d 823 (5th Cir. 1955); United States v. Blok, 88 U.S. App.D.C. 326, 188 F.2d 1019 (1951).

The state contends that effective consent to search may be given by one who shares control of the premises. But appellant alleges that the bedroom closet and effects it contained were his, and that he had not voluntarily shared their control with Mrs. Schmidt.[3]

■■ The state argues that a search is reasonable if permission is granted by one whom "the officers reasonably and in good faith believe had authority to consent to their entry." But we have held that "the crucial question is whether the citizen truly consented to the search, not whether it was reasonable for the officers to suppose that he did." Cipres v. United States, 343 F.2d 95, 98 (9th Cir. 1965). Mrs. Schmidt's mere presence in the house was not enough to establish as a matter of law that she had authority to

1. The state intermediate appellate court assumed the state trial judge decided the question of consent and waiver, and thought it "implicit" that the judge credited the officers and disbelieved Mrs. Schmidt. People v. Cunningham, 188 Cal. App.2d 606, 609–610, 10 Cal.Rptr. 604 (1961). For the reasons we have stated, we cannot agree.

The appellate court seems to have treated Amos and Johnson, supra, as distinguishable rather than not binding, although this is not entirely clear. 188 Cal. App.2d at 610, 10 Cal.Rptr. 604. In any event, we are concerned with the fact-finding process of the trial judge, not with the reasoning of the appellate tribunal.

2. The dissent suggests appellant may have waived the issue of Mrs. Schmidt's lack of authority. The state has not made this contention heretofore. If on remand the state now chooses to do so, it must bear the burden of proving that appellant intentionally abandoned a known right. No narrower formulation of the controlling standard is permissible. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963).

3. The bathroom searched in Burge v. United States, 342 F.2d 408 (9th Cir. 1965), was shared. Cf. Nelson v. People of State of California, 346 F.2d 73, 77 (9th Cir. 1965).

waive appellant's right to the privacy of his quarters and effects. Decisions of the Supreme Court "make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of 'apparent authority.'" Stoner v. State of California, 376 U.S. 483, 488, 84 S.Ct. 889, 892 (1964).

Even if Mrs. Schmidt had express or implied authority to enter appellant's bedroom for housekeeping purposes, it would not follow that she could permit a police search of appellant's room, closet, and effects. Stoner v. California, supra, 376 U.S. at 489–490, 84 S.Ct. 889; Chapman v. United States, 365 U.S. 610, 616, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); United States v. Jeffers, 342 U.S. 48, 51–52, 72 S.Ct. 93, 96 L.Ed. 59 (1951); Reeves v. Warden, supra, 346 F.2d at 924–925; Holzhey v. United States, supra, 223 F.2d at 826; United States v. Blok, supra, 88 U.S.App.D.C. 326, 188 F.2d at 1021.

Reversed and remanded for further proceedings.

THOMPSON, District Judge (concurring in part, and dissenting in part):

The issue presented is whether the procedures had in this case require an evidentiary hearing and a redetermination of the issue of unlawful search and seizure.

The initial trial was conducted before the Superior Court of the State of California, sitting without a jury and resulted in defendant's conviction on August 1, 1960 for the unlawful possession of narcotics. The only issue at the trial was the admissibility of the seized evidence. The attention of both parties and the trial judge was concentrated on that sole issue. Both parties had full opportunity to offer all evidence relevant to the issue. Only two witnesses testified, M. E. Buckner, one of the police officers who conducted the search, and Rene Schmidt, the occupant of the searched house, who consented to the search. The defendant did not testify. The transcript discloses that

Gerald Levie, Esq., defendant's attorney, was well prepared and forceful in his presentation of the defense that the narcotics had been unlawfully seized and were inadmissible as evidence. The conviction was affirmed on appeal. People v. Cunningham, 188 Cal.App.2d 606, 10 Cal. Rptr. 604. A petition for hearing was denied by the California Supreme Court. Certiorari was denied by the United States Supreme Court. Cunningham v. State of California, 1961, 368 U.S. 933, 82 S.Ct. 370, 7 L.Ed.2d 195.

The case has since been twice before the United States District Court for the Northern District of California and once before the Supreme Court of California on petitions for habeas corpus, questioning the legality of the search. In each instance, the petitions were denied. This is on appeal from the second Federal District Court petition.

In Townsend v. Sain (1963), the Supreme Court has established the guidelines for determination of when an evidentiary hearing is required or justified. The basic standard is:

"Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

The evidentiary facts supporting the validity of the search as adduced at the state court trial have been accurately summarized by the federal district judge in his memorandum opinion, as follows:

"Officer Buckner testified as follows: On May 5, 1960, at approximately 2:00 p.m., he and two other policemen ascended the porch of the house that was subsequently searched. Officer Buckner observed a woman, Mrs. Rene Schmidt, sitting in a chair in the front room facing

them. He knocked on the door, and she asked, 'Who is it?'. He replied that he was a police officer making a narcotic investigation and wanted to talk to her. She responded that she did not feel very well. Officer Buckner told her that he would appreciate talking to her for a few minutes, and she got up, came to the door, unhooked it, and invited the officers into the front room. As Mrs. Schmidt opened the screen door her dog ran out of the house. One of the officers caught the dog and brought it back into the house. After letting the police in, Mrs. Schmidt again sat down. When Officer Buckner asked her with whom she lived, she replied that she was living with petitioner. She stated that she knew he was on parole and knew of his past narcotic activity but explained that she was sure that he was no longer using narcotics. When asked which room was petitioner's, Mrs. Schmidt indicated the back bedroom. Officer Buckner then asked, 'You don't mind if we look around?' or 'Do you mind if we look at it?' and she answered, 'No' or 'No, go right ahead.' About five minutes later, Mrs. Schmidt got up and walked to the door separating the kitchen from the front room and asked, 'Aren't you supposed to have a search warrant?' Officer Buckner replied, 'Normally, yes, but you recall you gave us permission to search.' She then went back and sat down and did not say anything further. One of the officers then approached Officer Buckner with a vial containing yellow capsules appearing to be barbitol. When asked if she had a prescription for the pills, Mrs.

Schmidt replied that petitioner had given them to her. At that point she was placed under arrest. Shortly thereafter (about three minutes), Officer Buckner was called to the bedroom and observed three shoe boxes containing large amounts of narcotics sitting on a shelf in the closet."

The first issue, "Consent and Waiver", discussed in the majority opinion has, in my opinion, been settled. It is an established fact, found from conflicting evidence, that Rene Schmidt did voluntarily consent to the search. This finding should not be reexamined. The prior state court hearing occurred in the course of the original trial (it was in fact the only issue tried), and it is proper to assume "that the claim was rejected on the merits." (Townsend v. Sain, 372 U.S. p. 314, 83 S.Ct. p. 758).

A fair reading of the trial record discloses that the state made no genuine effort to support the search as being based on probable cause. The evidence on that issue was cursory and patently deficient. The district attorney did not argue probable cause at the conclusion of the reception of evidence.[1] The defendant objected to the reception of the narcotics as evidence and the Court overruled the objection and admitted the evidence. It is necessarily implied, on this record, that the Court found that the search and seizure were legal because Rene Schmidt had voluntarily consented to the search.

It is also, in my opinion, inaccurate to suggest that the state trial court may have adopted an erroneous view of the law, that is, that "federal cases are not controlling on the question of admissibility of evidence on search and seizure in California." The Townsend case

---

1. Opening his argument to the trial judge, the defense attorney, Mr. Levie, said:

"The first point is pretty obvious. In fact, the District Attorney has practically stipulated that this case is a consent case and not one of probable cause.

"They are not trying to establish probable cause, but they are saying they entered the place because of the consent— what they are relying on is, that they had the consent of the occupants, and I think I am not misstating their position in any way.

"I think this is being tried as a consent case, whether or not the occupant consented."

Paul John Geragos, Deputy District Attorney, did not dispute this statement or argue that the search was incident to an arrest supported by probable cause.

states (p. 314, 83 S.Ct. p. 758): "Furthermore, the coequal responsibilities of state and federal judges in the administration of federal constitutional law are such that we think the district judge may, in the ordinary case in which there has been no articulation, properly assume that the state trier of fact applied correct standards of federal law to the facts." In this case, when the defense attorney argued the theory of implied coercion, citing Amos v. United States (1921), 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, and Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, and the Deputy District Attorney argued that federal cases were inapplicable, the trial judge said: "Well, it seems to me that we are getting around to the federal rulings on search and seizure." I cannot infer from this a purpose to disregard federal law.

The second point of the majority opinion is "Authority to Waive". When the trial judge found, as is necessarily implied in this record, that Rene Schmidt freely consented to the search and admitted the seized narcotics into evidence, he also necessarily found that Rene Schmidt had authority to give consent. This was an experienced trial judge, a former professor of constitutional law. It is unrealistic to suggest that he admitted the crucial evidence after a trial devoted to testimony on the issue of consent without considering and finding that the person who gave consent had authority over the premises searched.

The fact is that defendant impliedly conceded Schmidt's authority. The question was never raised. Neither Rene Schmidt nor defendant testified about the details of the relationship between them or about the arrangements under which they occupied the residence which was searched. We don't know whether they were owners, lessees, renters or trespassers. We do know that defendant Cunningham lived with Rene Schmidt and that the back bedroom was identified

as his. In my opinion, Rene Schmidt's occupancy of the premises at the time of the search invested her with apparent authority and control over them upon which the officers were entitled to rely prima facie. If subsequent evidence should prove their reliance misplaced, the fruits of the search would be inadmissible. They took that chance.

By the same token, the trial judge, conducting a plenary trial of the validity of the search and offering full opportunity to both parties to present any evidence relevant to the question, was entitled to rely on Schmidt's apparent authority to consent to the search when that authority was not impugned either by evidence or in argument. It should be emphasized that the defendant did not testify. This was a court trial. He was represented by competent counsel who ably presented his contest of the validity of the search. The only fair inference is that his testimony, if given, would not have aided him.

This situation also presents an interesting question of which of two constitutional privileges the Court was supposed to protect. Defendant, at the trial, chose to invoke his privilege under the Fifth Amendment not to testify, thus deliberately curtailing the scope of the proof in support of his Fourth Amendment privilege. Having lost, he now says, "I should have testified and I want now to testify that these were my 'private' living quarters."[2]

Even at this late date, defendant, in his affidavits collaterally attacking the state court finding, does not see fit to enlighten the Court as to the facts. The only new fact stated by the defendant in his affidavit is: "That the rear bedroom of the said private dwelling house was the private living quarters of affiant herein." This, under these circumstances, is a conclusory statement and amounts to playing a game with the Courts. He makes no effort to state facts from which the Court might draw its own conclusion

2. In her post-conviction affidavit, Rene Schmidt does not aver that the back bedroom was Cunningham's private domain, or any facts from which this might be inferred. Her affidavit, in substance, adds nothing to her trial testimony.

as to whether or not he had any private living quarters protected by the Fourth Amendment.

Obviously, the material facts (re authority to waive) were not fully developed at the state court hearing. The equally obvious reason is that defendant elected not to present this issue. "If, for any reason not attributable to the inexcusable neglect of petitioner, see Fay v. Noia, post [372 U.S.] p. 438 [83 S.Ct., p. 848] (Part V), evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled. The standard of inexcusable default set down in Fay v. Noia adequately protects the legitimate state interest in orderly criminal procedure, *for it does not sanction needless piecemeal presentation of constitutional claims in the form of deliberate by-passing of state procedures.*" Townsend v. Sain, 372 U.S. p. 317, 83 S.Ct. p. 759.

The controlling standard respecting inexcusable default was articulated in Fay v. Noia (1962), 372 U.S. 391, at 438–439, 83 S.Ct. 822, at 849:

"We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]— 'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. Price v. Johnston, 334 U.S. 266, 291 [68 S.Ct. 1049, 1063, 92 L.Ed. 1356]. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. Carnley v. Cochran, 369 U.S. 506, 513–517 [82 S.Ct. 884, 888–891, 8 L.Ed.2d 70]; Moore v. Michigan, 355 U.S. 155, 162–165 [78 S.Ct. 191, 195–197, 2 L.Ed. 2d 167]. A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. E. g., Rice v. Olson, 324 U.S. 786 [65 S.Ct. 989, 89 L.Ed. 1367]."

It is not clear from this record whether or not Cunningham, after consultation with counsel, deliberately elected not to testify at the state court trial. Cf. Nelson v. People of State of California (9 CCA 1965), 346 F.2d 73. The issue of deliberate by-passing, like the requirement of exhaustion of state court remedies (Ex Parte Hawk, 1944, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572), from which it stems (Fay v. Noia, supra), inheres in every federal habeas corpus application attacking a state conviction. It does not depend on someone asserting the point or defense. If Cunningham consciously invoked his Fifth Amendment privilege not to testify at the trial, he should not now be permitted to recant for the purpose of aiding his claim under the Fourth Amendment.

I think the evidentiary hearing required by the majority should be limited to two issues:

1. Did Cunningham understandingly and deliberately, for whatever reason, elect not to testify. at the state trial?

2. Was the character of Rene Schmidt's possession and control of the searched premises such as to vest in her the power to consent to the search?

If either question is answered in the affirmative, the conviction should be sustained.

