**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Thomas MIX, Defendant-
Appellant.**

**No. 29611.**

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1971.

**616**

Leonard Moriber (Court Appointed), Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael J. Osman, Charles O. Farrar, Jr., Asst. U. S. Attys., Miami Fla., for plaintiff-appellee.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Robert Thomas Mix was indicted September 17, 1969 by indictment charging him with the unlawful possession on September 4, 1969, of a Thompson Model 1921 submachine gun, a German MP 40 machine pistol, and an automatic rifle with a barrel length of 12¼ inches, that were not registered to him, in violation of Section 5861(d) Title 26, United States Code.[1] After a jury trial, he was found guilty on all counts and sentenced to imprisonment for eighteen months on each count, the terms to run concurrently. On this appeal he urges reversal of his conviction on the following grounds:

1. The unconstitutionality of Title 26, U.S.C., Section 5861(d), the statute under which he was convicted, as violative of the Fifth Amendment's privilege against compulsory self-incrimination.

2. The district court's denial of his motion to suppress the fruits of a search of September 4, 1969.

3. The district court's denial of his motion to suppress statements made to a

---

1. Section 5861(d), Title 26, United States Code, reads:

 It shall be unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms and Registration Record.

 Section 5845(a), Title 26, United States Code, defines "firearm" to include machine guns and rifles with barrels less than sixteen inches in length. The definition of machine guns which appears in Section 5845(b) encompasses machine pistols.

Sections 5861 and 5845 as presently written were enacted by Congress in 1968 as part of Public Law 90–618, 82 Stat. 1234, the National Firearms Act Amendments of 1968 (also known as the Gun Control Act of 1968). This legislation was designed to remedy the constitutional defects in the National Firearms Act brought to light as a result of the Supreme Court's decision in Haynes v. United States, 1968, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923.

federal agent by him on September 5, 1969.

4. Insufficiency of the evidence to establish that appellant possessed the firearms described in the indictment.

5. Admission into evidence against him of a certificate executed by officials of the Internal Revenue Service certifying that the three firearms described in the indictment were not registered to Mix in the National Firearms and Registration Record.

For reasons which we indicate below, we affirm the judgment of the lower court.

## I. The Constitutionality of the Statute

Prior to trial, appellant moved to dismiss the indictment on the ground that the amended National Firearms Act conflicted with the Fifth Amendment's self-incrimination clause. The denial of that motion is assigned as error on this appeal.

The United States Supreme Court, in United States v. Freed, decided April 5, 1971, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356, resolved this issue adversely to appellant. In a prosecution for the unlawful possession of hand grenades (Title 26, U.S.C., § 5845(f)), the Court held that the confidentiality provisions of Section 5848(a), Title 26, United States Code,[2] and the Internal Revenue Service's policy of not disclosing information obtained from registration statements to law enforcement authorities cured the constitutional defects noted in *Haynes,* supra. *Freed* controls this issue. The first assignment of error is without merit.

## II. The Validity of the Search and Seizure of September 4, 1969

At about 12:30 P.M. on September 4, 1969, Patrolman B. Horvath of the Dade County Public Safety Department was approached by a white female driving a white Corvair at the corner of Northwest 27th Avenue and 87th Street, Dade County, Florida. The woman stated that she was married and that she had a date with appellant in a few minutes at the Northside Shopping Center. She expressed fear of Mix because he was an ex-convict and had a gun. Patrolman Horvath, at about 1:00 P.M. that same date, observed appellant in the parking lot of the Northside Shopping Center. Appellant was shouting and banging on the roof and hood of a white Corvair. Two Dade County detectives then assisted Patrolman Horvath in arresting appellant for disorderly conduct. Patrolman Horvath conducted a search of appellant's car, which was parked nearby, and found a gun in the trunk. This gun was not introduced at the trial. Appellant was taken to the Dade County jail by Patrolman Horvath.

Shortly after the incident at the shopping center parking lot, the two detectives who had assisted in the arrest of appellant, L. F. Hough and Raymond F. Jones, were told by a confidential informant that appellant was reputed to possess illegal firearms in his home. At about 2:00 P.M. on September 4, the detectives went to appellant's home in Miami, Florida, and were met by appellant's mother, Mrs. Judith Gasson. What transpired next was the subject of dispute at the hearing on appellant's motion to suppress prior to trial.

At that hearing on the motion to suppress the two detectives testified that

---

2. Section 5848(a), Title 26, United States Code, reads:

No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

they were met at the door by Mrs. Gasson and that they told Mrs. Gasson that her son had been arrested, that they did not have a search warrant, that they were looking for illegal weapons possibly in appellant's possession, and that they had no legal authority to conduct a search of the premises without Mrs. Gasson's permission. According to the detectives, Mrs. Gasson voluntarily signed a consent to search form and told the detectives that appellant had no lease for a portion of the premises, that he paid no rent and contributed nothing to the support and maintenance of the family, and that the house was owned by Mrs. Gasson and her husband. The detectives testified that Mrs. Gasson conducted them into an enclosed porch off the kitchen in which a rollaway bed, a chest of drawers and a closet were located, the room having been identified by Mrs. Gasson as the one in which her son slept. In plain view, according to the detectives, was a submachine gun case which was found to contain a disassembled Thompson submachine gun. The other two weapons described in the indictment were found in the closet and the chest of drawers. The detectives stated that Mrs. Gasson identified certain personal items of her own in the room and claimed free access to the room in which appellant slept. Finally, the detectives testified that Mrs. Gasson expressed relief to them when the firearms were discovered, because of appellant's erratic behavior on previous occasions on which she stated he had threatened to use the weapons on members of the family.

Mrs. Gasson testified for appellant at the hearing on the motion to suppress. She stated that the detectives, upon her opening of the door, deceitfully advised her that appellant had given them permission to search his room. She further testified that appellant had been in the habit of contributing between twenty and twenty-five dollars a week to the support of the family and that the consent to search form was signed by her, with the physical assistance of Detective Jones only after the weapons were discovered.

The trial judge, at the conclusion of the testimony in the suppression hearing, indicated that he disbelieved the testimony of Mrs. Gasson and believed the testimony of the two detectives. He denied appellant's motion to suppress the three weapons seized by the two detectives. The denial of the motion is challenged on this appeal as legally incorrect. We agree with the government that the trial juge properly applied the law in effect in this Circuit in finding the search to have been properly conducted pursuant to a valid consent on Mrs. Gasson's part.

In Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, the appellants were convicted of the interstate transportation of stolen motor vehicles and of conspiracy to commit such transportation. Gurleski's co-defendant Villafranca, with whom he lived as man and mistress, consented to a police officer's search of Gurleski's car, which was parked outside the residence which they shared. Villafranca had possession of the keys to the car and opened the trunk of the vehicle for the police. Items taken from the trunk were admitted into evidence at the trial over Gurleski's objections. In rejecting Gurleski's contention that the search was unlawful, this Court cited United States v. Sferas, 7 Cir. 1954, 210 F.2d 69, 74, for the proposition that "where two persons have equal rights to the use or occupation of premises, either may consent to a search, and the evidence thus disclosed can be used against either".

United States v. Thompson, 5 Cir. 1970, 421 F.2d 373, vacated on other grounds, 1970, 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17, was a prosecution for the armed robbery of a national bank. In holding that the appellant's wife had the authority to consent to a search of the home shared by the appellant and his wife, this Court overruled the doctrine of Cofer v. United States, 5 Cir. 1930, 37 F.2d 677. The Thompson opinion cited the holdings in Gurleski and Sferas,

supra, as authority and laid down a two step test for cases in which an individual other than the accused consents to a search of premises on which incriminating evidence is found: (1) did the person who gave the consent have equal rights to the use and occupation of the premises; and if the person who gave consent did have equal rights, (2) was the consent to search voluntarily given.

In Woodbury v. Beto, 5 Cir. 1970, 426 F.2d 923, this Court affirmed the denial of habeas corpus relief to an individual who had been convicted of murder in state court. We held that narcotics taken from the home of an acquaintance of Woodbury with the occupant's consent had been properly admitted into evidence against Woodbury at his trial.

Recently, in United States v. Hughes, 5 Cir. 1971, 441 F.2d 12, this Court held that the owner of a house had the authority to consent to a search of a room utilized by the appellants there for counterfeiting activities even though the room was padlocked and the owner did not have the key. It appears that this ruling was based upon a finding that the owner had surrendered control of the room out of fear, thereby depriving the appellants of a reasonable expectation of freedom from governmental intrusion into the room.

Mrs. Gasson's testimony at the suppression hearing was probably designed to invoke the doctrines enunciated in Holzhey v. United States, 5 Cir. 1955, 223 F.2d 823, and Garza-Fuentes v. United States, 5 Cir. 1968, 400 F.2d 219. In *Holzhey* we held that the daughter and son-in-law of the appellant, although possessing the authority to consent to a search of the garage apartment in their home occupied by the appellant, did not have authority to authorize a search of a locked cabinet owned by the appellant

and located in the apartment. *Garza-Fuentes* involved a situation in which a government agent using public funds, rented a motel room for the purpose of consummating a narcotics transaction with the appellant. Before the appellant entered the room, the agent gave consent to other agents to enter the room for the purpose of making an arrest when a pre-arranged signal was given. This Court held that the arresting officers' failure to announce their authority and purpose before breaking the night latch on the motel room door did not render the subsequent search and seizure of evidence unlawful. We observed:

"The situation may be analogized to those cases where consent to enter a dwelling to effect a search and seizure, rather than an arrest, is given by a party validly in control of the premises to be searched. Where such consent is not coerced, and where the search does not extend to a part of the premises rightfully in the exclusive control of the one against whom the search is directed, the courts have upheld the validity of the search." 400 F.2d at 222.

 The trial judge here made a valid and justified credibility choice in believing the testimony of the two detectives and in discrediting the testimony of Mrs. Gasson. Under the facts as found by him, the search and seizure involved were entirely reasonable and not in violation of Mix's rights under the Fourth Amendment to the United States Constitution. Mrs. Gasson enjoyed equal rights in the premises (including the room in which appellant slept) with appellant and voluntarily gave the detectives permission to search. The trial judge committed no error in denying appellant's motion to suppress the three weapons found by the detectives.[3]

---

3. We withheld decision in this case pending the Supreme Court's ruling in Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. Because the Supreme Court held that no search and seizure took place when police officers went to the defendant's house and obtained from his wife a rifle and articles of clothing belonging to the defendant, it did not reach the issue of whether the defendant's wife could waive her husband's constitutional protection against unreasonable searches and seizures. In

### III. Admissibility of Mix's in Custody Statements of September 5, 1969

On September 5, 1969, having been taken into federal custody, appellant was interviewed by Robert A. Schmidt, a special investigator with the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service. Agent Schmidt gave appellant a complete *Miranda* warning at the end of which appellant was asked if he understood his rights, receiving an affirmative reply. Agent Schmidt proceeded to take appellant's fingerprints and at the same time questioned appellant. Agent Schmidt at trial related what then transpired:

"Q. And what did you ask him?

A. I asked him if he owned the guns and he said he did.

Q. What guns did you refer to?

A. To the guns we have in our possession, that I had taken custody of from the Dade County Public Safety Department Firearms Division.

Q. What else, if anything, did he say concerning these guns?

A. In answer to my question about owning them, he admitted owning them and said he owned them since 1956. He did not say who he got them from. He then said the Thompson was in mint condition, but that he hadn't fired any of the other guns."

The appellant's argument here is to the effect that the government, in an effort to establish the admissibility of the statements related by Agent Schmidt, merely proved that appellant comprehended his rights under Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but failed to prove that appellant waived those rights prior to making a statement. We do not agree. With Judge Ainsworth as our organ in United States v. Montos, 1970, 421 F.2d 215, cert. denied 1970, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532, we said:

"When a defendant warned of his rights makes statements without a lawyer present, the prosecution may use these statements at trial only if it sustains its 'heavy burden' of demonstrating that the defendant 'knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). See also Gilpin v. United States, 5 Cir. 1969, 415 F.2d 638; Moll v. United States, 5 Cir. 1969, 413 F.2d 1233. To be valid, a waiver must be made voluntarily, United States v. Ogle, 5 Cir. 1969, 418 F.2d 238, and may not be presumed 'simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). An express statement that the individual does not want a lawyer is not required, however, to show that the individual waived his right to have one present. See Bond v. United States, 10 Cir. 1968, 397 F.2d 162, 165. All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. See Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

"In this case the record establishes that Montos was adequately advised of his rights and that he voluntarily, knowingly, and intelligently waived them. Stokes read the warnings to Montos and then handed the warning and waiver form to him. After defendant had read the form, Stokes asked if he understood it Montos replied that he did. Approximately 40 minutes later, after Montos had been questioned briefly, he was taken to the Sectional Center. He there signed the waiver form and asked to call a

---

the absence of an authoritative pronouncement from the Supreme Court, we adhere to the established rule in this Circuit, as enunciated in the cases discussed above.

lawyer. We conclude under all circumstances of the case that the Government met its burden of showing a valid waiver." 421 F.2d at 224.

■ In the case now at bar, Schmidt gave complete advice to appellant as to his rights before any questioning occurred. Before he made the inculpatory statements involved, Mix was asked if he understood his rights and responded that he did understand them. It was not necessary for Agent Schmidt to run down the list of rights available to appellant seriatim and then to inquire as to each whether appellant waived that right. We are of the clear view that the government adequately established the voluntariness of the statements made to Agent Schmidt by Mix on September 5, 1969, and that accordingly the district judge did not err when he admitted them in evidence at trial.

*IV. Sufficiency of the Evidence as to Possession of the Firearms.*

Appellant twice moved during the course of the trial for directed verdicts of acquittal on the theory that the government had failed to present a prima facie case with respect to appellant's possession of the weapons described in the indictment. The district court denied both motions and appellant argues in this Court that the denials constituted reversible error. We think not.

The critical factual issue of possession was contested at the trial by appellant through the testimony of Mrs. Gasson. She testified that her husband owned the weapons described in the indictment and had owned them for the previous twenty-one years. Appellant's mother denied that the weapons belonged to her son. Mr. Gasson was not called by appellant to corroborate his wife's testimony.

The government endeavored to establish appellant's possession of the weapons through the testimony of Detectives Hough and Jones and the testimony of Agent Schmidt. Detectives Hough and Jones related to the jury their versions of Mrs. Gasson's declarations as to ownership of the weapons at the time of the search and seizure and Agent Schmidt related the appellant's own statements of September 5, 1969. It is undisputed that the weapons were found in the room in which appellant slept in the Gasson residence. See our decision in Teate v. United States, 1961, 297 F. 2d 120, holding that proof that illegal whiskey was found in a room in defendant's home was sufficient to go to the jury on a charge of possession, even though other members of the household had access to the room in question.

■ There was sufficient evidence to present a jury question as to appellant's possession of the firearms. We view the jury's verdict as clearly supported by the evidence, taking the view thereof most favorable to the prosecution. Glasser v. United States, 1944, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

*V. The Admissibility of the Internal Revenue Service Certificate*

Government's Exhibit Number 4 was a two page document on the stationery of the Internal Revenue Service, Department of the Treasury, United States of America, dated October 2, 1969. The first page was signed by W. H. McConnell, Assistant Chief, Operations-Coordination Section, Enforcement Branch, Alcohol, Tobacco and Firearms Division, Internal Revenue Service, and it read as follows:

"To whom it may concern:

"This is to certify that Raymond L. Lesage, co-ordinator, Enforcement Bureau, Alcohol, Tobacco and Firearms Division, Internal Revenue Service, Washington, D. C., had custody and control of the National Firearms Registration and Transfer record showing the registrations as well as the importation, transfer and making of firearms, as required under the National Firearms Act Amendment of 1968, filed in the National Office of the Internal Revenue Service, Washington, D. C.; that I am familiar with his signature; and that I have exam-

ined his signature which appears on the attached statement and find it to be his true signature."

The second page of the exhibit was on Internal Revenue Service stationery and was signed by Raymond L. Lesage. It read as follows:

"To whom it may concern:

"Section 5841 of the National Firearms Act Amendments of 1968 (26 U.S.C. 5841) provides that the Secretary of the Treasury or his delegate shall maintain a central registry of all firearms not in the possession or under the control of the United States which come within the purview of Chapter 53 of the Internal Revenue Code of 1954 (26 U.S.C. 5801–5872). That central registry is known as the National Firearms Registration and Transfer Record and pursuant to regulations in Part 179 of Title 26, Code of Federal Regulations, is maintained in Washington, D. C. by the Director of the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service.

"This is to certify that I, Raymond L. Lesage, Coordinator, Enforcement Branch, Alcohol, Tobacco and Firearms Division of the Internal Revenue Service, Washington, D. C., have custody and control of the said National Firearms Registration and Transfer Record pursuant to a delegation and authority from the Director, Alcohol, Tobacco and Firearms Division.

"I further certify that, after diligent search of said record, no evidence was found to show that a Thompson Submachine Gun, Model 1921, .45 caliber, with a 10¹¹⁄₁₆ inch barrel, serial number 1550; a Schmeiser Machine Pistol, MP40 Model, 9mm caliber, with 9.9 inch barrel, serial number 8615t; or a Full Automatic Rifle, .38 caliber, with a 12¼ inch barrel, are registered to Robert Thomas Mix, or that the said Robert Thomas Mix acquired these firearms by lawful makings, transfers or importations."

The exhibit was admitted into evidence over appellant's objections. On appeal, appellant argues that the admission of the exhibit deprived him of his Sixth Amendment right of confrontation because the government had the power to call Mr. Lesage and Mr. McConnell as witnesses at the trial.

At trial the government asserted that the exhibit was admissible under Rule 27, Federal Rules of Criminal Procedure, and Rule 44, Federal Rules of Civil Procedure, as an official record. A similar proffer was made by the government in another firearms prosecution under Title 26, U.S.C., Section 5861, United States v. Thompson, 3 Cir. 1971, 420 F.2d 536. Objection was there likewise made to admission of the evidence on Sixth Amendment grounds of right of confrontation. The Third Circuit, speaking through Judge Maris, held:

"The defendant contends that the admission of this document violated his right of confrontation under the Sixth Amendment. It is true that confrontation of a witness so that he may be cross-examined is a matter of right in a criminal prosecution, but it has long been held that official registers or records kept by persons in public office in which they are required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties, are admissible, without calling the persons who made them, as a reasonable exception to the hearsay rule. And it has also been held that an affidavit of an officer having custody of official records as to lack of a certain record after diligent search, is admissible under Rule 27 to show the absence of any record or entry of a relevant act, transaction, or occurrence, and is not violative of the defendant's constitutional right of confrontation. The trial judge has the duty to determine whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation. In this case the trial judge decided that the certificate of Benedict was admissible under Criminal Rule 27. Under the circumstanc-

es, we are satisfied that its admission was not error." 420 F.2d at 545.

We agree with the Third Circuit and hold that the appellant's Sixth Amendment right of confrontation was not violated by the trial judge when he admitted Government Exhibit Number 4 into evidence.

Affirmed.