[Crim. No. 367.   Fourth Appellate District.—August 11, 1938.]

THE PEOPLE, Respondent, v. JOHN DARNEL et al., Appellants.

Albert J. Trujillo for Appellants.

U. S. Webb, Attorney-General, and Warner Praul, Deputy Attorney-General, for Respondent.

THOMPSON (GORDON), J., *pro tem.*—The defendants were convicted by a jury of eight counts of burglary in the second degree and have appealed from the judgments and from the orders denying their motions for a new trial.

A general store, known as the Tatum General Store, in the town of Nuevo, Riverside County, was entered on the 19th day of November, 1937. The cash register was opened, with about $25 in small change missing. In addition to the cash, there were about 18 cartons of cigarettes missing.

On December 5, 1937, the Greyhound Service Station in Perris, Riverside County, was burglarized and about $6 or $8 in small change taken. There were also a screw-driver and a pair of pliers missing.

The Texaco Service Station in Perris, Riverside County, was entered on December 12, 1937, and approximately $2 in change and five cartons of cigarettes were missing.

December 18, 1937, Small's Grocery Store in Perris, was entered and approximately $5 was removed from the cash register. Cigarettes and groceries were also found missing. ·

An establishment known as the Sandwich Shack, in Perris, was entered on December 18, 1937. A cigarette machine had been broken open and some cigarettes removed. There were also ice cream and milk missing.

Burnham's Grocery Store, in the town of Murrieta, was burglarized on December 27, 1937, and approximately $16 in small change was taken. There was also a considerable amount of dry goods, consisting of hosiery, shoes and overalls, which had disappeared. Some watches were also taken at the same time.

On January 11, 1938, Wilson's Grocery Store, situated in the town of Moreno, was burglarized and the cash register containing $25 in small change was missing.

■ Appellants urge all of the statutory grounds for a reversal of their convictions, but particularly urge that the verdicts are contrary to the evidence. It is contended by appellant Shaw that the testimony given on each of the several counts does not prove other than mere suspicion and that it would have been impossible for him to have committed or aided in the commission of the offenses charged, in that he was in the state of Texas at the time the Tatum General Store was burglarized. Appellant Shaw introduced testimony to prove that he did not leave Texas until November 23, 1937, four days after the Tatum burglary. The witness so testifying was appellant Shaw's stepfather. He testified that he lived in a tourist camp at Odessa, Texas; that Bill Shaw came there about November 5th or 6th, and stayed with him until November 23d, and that he himself remained there until January 2, 1938, when he came to California. He was positive that Shaw had remained in Odessa, Texas, until November 23, 1937, although on cross-examination he testified that he, the witness, left the tourist camp at Odessa, Texas, on November 21, 1937, and went to Hobbs, New Mexico. It would seem from this testimony that he was in no position to know when Shaw left Texas. The jury apparently discounted his testimony. The People, however, introduced testimony that the appellants were seen together at a vineyard about five miles from Perris, during

the months of November, December and January. There was also testimony that appellants were seen together in November and December in the vicinity of the Greyhound Service Station, and in the localities where the other burglaries were committed. The jury apparently rejected the testimony of the appellants' witnesses and accepted that of the witnesses for the People. There was also other evidence introduced at the trial, that the appellant Shaw was elsewhere at the time of the commission of the other offenses charged in the information, and this was likewise rejected by the jury. The jury had a right to accept or reject the testimony as given by the respective witnesses and, having chosen to believe the People's witnesses, found against the appellant Shaw on his defense of alibi.

A witness for the People testified that on the morning of January 16th he was delivering papers in the vicinity of Nuevo; that he noticed a Ford coupe traveling ahead of him without any lights; that a few minutes later the Ford coupe turned north and that the lights had been turned on. A photograph of Darnel's Ford coupe was shown to this witness and identified by him as being similar to the coupe seen by him. The place where this car was seen was near a culvert about three miles from Moreno. The missing cash register from the Moreno store was found in this culvert. Footprints and tracks were also discovered in the vicinity of this culvert. These tracks were measured and were found to be about 11½ inches long. Automobile tracks in this vicinity were also measured and compared with the tires on the car belonging to appellant Darnel. This comparison disclosed that the tire marks fitted exactly.

Footprints found in the vicinity of the Hamre Grocery Store at Hemet, showed one pair of shoes to be fairly new and measured 11½ inches long. These were compared with the shoes in appellants' possession and found to correspond. Similar tracks were discovered near the Sandwich Shack and Small's Grocery Store. These tracks all corresponded with the shoe received in evidence.

During the imprisonment of the appellants in the San Bernardino jail, measurements were made of their shoes. The shoe of appellant Darnel was 11½ inches long, and the appellant Shaw's shoe measured 12 inches long. The evi-

dence further established that there were some 12-inch tracks found at the Hamre store.

In monetary transactions effected by them during November, December and January, small change was used in the same denominations as were taken from the various stores.

Tools found in Darnel's car were used in effecting entrance to several of the stores. A tire wrench found in the car exactly fitted an impression on the transom of Tatum's store.

There was evidence presented which established that on the 23d of January, 1938, appellants rented a cottage at 525 East Cardiff Street, San Bernardino. A cot was placed in the kitchen for occupancy by appellant Shaw. Subsequent to the arrest of appellants, deputy sheriffs went to the address at San Bernardino and discovered numerous articles of merchandise which had been stolen from the various stores. Certain tire irons and wrenches were also found in the Ford coupe belonging to appellant Darnel, which were fitted into the various marks and impressions made when the doors of the several stores were forced. These tools were used in accomplishing the burglaries.

Quantities of merchandise, identified as having come from the various stores, were found in the possession of the appellants at the place where they were living.

It is settled law in this state:

"That where goods have been feloniously taken by means of a burglary and they are immediately or soon thereafter, found in the possession of a person who gives a false account or refuses to give any account of the manner in which he came in their possession, proof of such possession and guilty conduct is presumptive evidence, not only that he stole the goods, but that he made use of means by which access to them was obtained." (*People* v. *Lang*, 142 Cal. 482 [76 Pac. 232].)

Neither appellant took the witness stand nor made any explanation of their possession of the stolen property. During a conversation with appellant Shaw as to where the merchandise had come from, he stated "He would not dare to tell if he wanted to live."

From the foregoing evidence adduced at the trial, it is apparent that the evidence was sufficient to support the conviction. There was a sharp conflict in the testimony, which was

resolved in favor of the People. The circumstances, when considered together, point directly to the guilt of the appellants.

■ Appellants further contend that the trial court committed prejudicial error in receiving evidence of an admission of appellant Shaw. During the trial of this case a deputy sheriff was called as a witness for the People. He was asked to relate a conversation had with appellant Darnel as to whether he had ever been convicted of a felony. In relating the conversation, the witness confused Shaw with Darnel and testified to a conversation had with Shaw instead of Darnel. Appellant Darnel had entered a plea of not guilty to the prior conviction charged in the information. Appellant Shaw had admitted those charged against him. The trial court had stricken from the record the conversation the witness had with appellant Shaw and the jury was admonished to disregard this testimony. Because of this error, appellants urge that their rights were prejudiced by reference to this prior conviction of Shaw, which was admitted at the time of plea.

At the time of plea, appellant Darnel denied a prior conviction of a felony and because of this denial it was proper for the prosecution to introduce in evidence any admission made by him as to a prior conviction.

The question here presented is: "Were the rights of the appellants prejudiced by reference to a prior conviction admitted by appellant Shaw, which was alluded to by the witness in response to a question propounded by the district attorney as to a conversation had with appellant Darnell?"

We think not. This confusion on the part of the witness was simply a mistake and misunderstanding on his part, for which neither counsel was to blame. As soon as he discovered his error, the witness corrected his testimony and the trial judge struck out his former evidence and admonished the jury to disregard it. We must assume that the jury followed the admonition of the court and disregarded the testimony stricken out. In the case of *People* v. *Mock Don Yuen*, 67 Cal. App. 597 [227 Pac. 948], the court held that where the District Attorney, in the cross-examination of a defendant, made an inadvertent reference to a prior conviction, the defendant's rights could not have been preju-

diced, after the court's admonition to the jury to disregard the reference.

The error which appears, was accidental and was cured by the court's admonition to the jury. Under these circumstances, the error was not sufficiently prejudicial to justify a reversal.

The judgments and the orders denying motions for a new trial are affirmed.

Barnard, P. J., and Marks, J., concurred.