[Crim. No. 13698.   Second Dist., Div. Five.   Jan. 8, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS  JOHN
ROSENBROCK, Defendant and Appellant.

Louis John Rosenbrock, in pro. per., and Albert Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—After a preliminary hearing, defendant was charged by information with violation of section 459 of the Penal Code (burglary). A prior violation of section 470 of the Penal Code (forgery) was also alleged. Defendant denied the prior and pleaded not guilty. Trial by jury was waived, and the matter was submitted on the testimony in the first 33 pages of the transcript of the preliminary hearing, subject to the right of either side to put on additional testimony. After testimony by the complaining witness and the defendant, the court found the defendant guilty of burglary in the second degree. No disposition was made on the prior. A motion for a new trial and probation were denied. Defendant was sentenced to the state prison for the term prescribed by law. Defendant appeals from the judgment and from the order denying his motion for a new trial.

*Facts*

The defendant arrived at the home of a friend, Pease, in Studio City about noon on February 4, 1966. He had met Pease about one and a half years previously, while both were incarcerated in a county penal institution. During the course of their friendship, Pease had come into good financial times. Pease testified that although he was unemployed, he and his wife enjoyed a $1,500 a month income from the wife's stocks. Defendant apparently had not been so fortunate, and Pease had come to the aid of defendant from time to time by loaning him funds. Defendant remained with Pease throughout

the course of the afternoon and early evening. Part of the day was spent at Pease's apartment, and part of it elsewhere. During the course of the day, the two did a bit of drinking. Defendant represented to Pease that a third party owed him money, and he used the telephone many times in apparent efforts to reach the debtor during the day. It was hoped that by collecting this debt defendant could in turn pay back part of what he owed Pease. Defendant was not successful in his phone calls, and Pease wrote the phone number on the cover of a magazine so that he could phone on behalf of the defendant.

Pease's wife was also home during the day. She was engaged in doing some washing, and went in and out of the apartment from time to time. She had placed her house key in a dish on a coffee table in the living room for her ease of access thereto, near the location of the phone and magazine. The Peases had deposited in various piggy banks substantial amounts of change which they saved in the expressed hope that a vasectomy previously performed on Pease could be repaired so that the couple might have children. Two piggy banks were in the bedroom closet, and one in the living room. They contained at least $1,500 in coin. The evidence was that when they counted that amount, they stopped counting, though more had been deposited. About $2,000 in cash, and at least that much in jewelry were also in the bedroom. Defendant was one of the few people who knew about the piggy banks. He did not know about the $2,000 and jewelry. Nobody else was in the apartment during the period in question except a TV repairman, who was there from about 5:30 to 6:30. This workman was in the constant company of Pease.

At about 7 p.m., defendant and Mr. and Mrs. Pease prepared to leave the apartment. The intent was that the defendant was to drive them to a local bar where, after a drink, Mrs. Pease was to shop and return home to complete preparation for dinner. As they started to leave, Mr. Pease inquired as to whether his wife had her house key. She said no, it was missing from the bowl on the table. After an unsuccessful search for the key, they left, Mrs. Pease being given Mr. Pease's key so she could get back in. On the way to the bar, defendant stated he intended to drive to Torrance and get his money from the person he had been trying to reach by phone; that he would give some of it to his family, and bring some back to Pease; that he would meet Pease at the bar in

about two hours. The three separated at the location of the bar, and defendant drove off.

At about 8 :30 to 8 :45 p.m., Mrs. Pease returned home. She noted her house key had been returned to the bowl on the table and that the three banks and a pillowcase were missing. She also noted that the portion of the magazine cover on which the phone number had been written had been torn off. Mrs. Pease phoned her husband, and he came home. The defendant did not return to the bar as had been planned, nor did he come back that evening to the Peases' residence.

In addition to the above facts, it was established that for a short period of time the defendant had been left alone in the living room while Pease changed clothes, preparatory to leaving at 7 p.m. Also, Mrs. Pease testified that while searching for her missing key before leaving at 7 p.m., she certainly would have seen the torn magazine had it then been torn, and that therefore it had not been torn as of the time of their leaving. Mr. Pease tended to confirm this conclusion, but was not entirely clear on the subject.

The defendant testified that he did not take the key, and had not returned to the Pease residence after dropping them off at the bar. He stated he had torn the phone number from the magazine, but had done so prior to their all leaving at 7 p.m. He testified that he lived at a motel on Ventura Boulevard in the San Fernando Valley, not far from the Pease residence, and had proceeded there after leaving the Peases. His rent was stated to have been paid in small change and in an amount of some $28; that he had used the change from his child's piggy bank to make the payment. He stated that he then moved his family, with the use of a trailer, to a place in Compton and had not contacted Pease after the day in question.

### Contentions

Defendant contends: (1) that the evidence is insufficient to sustain the verdict; and (2) that he was deprived of the right to cross-examine Mrs. Pease.

### Sufficiency of the Evidence

By its very nature, burglary is the type of crime that only rarely is committed in front of eyewitnesses. As a consequence, it often is necessary to prove the crime circumstantially. This is, of course, permissible. And it need not be repeated that on appeal we do not reweigh the evidence as a trier of fact. Our duty in analyzing the sufficiency of the evidence is to determine if there is substantial evidence to sup-

port the verdict. (*People* v. *White,* 218 Cal.App.2d 267, 274-275 [32 Cal.Rptr. 322].) On review of the evidence herein, we find the requisite support.

█ The trier of fact believed that few, if any, people besides the Peases and the defendant knew of the banks; that defendant was the only person other than the Peases themselves who had access to the key to the house at the time in question; that whoever entered and removed the piggy banks used the key for entry and then replaced it after successfully completing his task. The court must have concluded that the defendant misled the Peases by telling them that he was going to Torrance and would not return for two hours; that this false representation was designed to keep the Peases away from the house to enable him to perpetrate his plan; and that defendant's exiting the area with his family by immediately packing up and leaving that part of the city was akin to fleeing the scene of the crime. The removal of the telephone number also was of importance, for the defendant corroborates that it was he who accomplished this act, and, if the court believed Mrs. Pease, defendant would necessarily have entered the residence during the absence of the Peases. The fact that the defendant paid his motel bill all in coins indicates that he somehow had possession of an unusually large amount of change. The fact of suspiciously similar monies has been considered important in other cases in which burglary has been proved by circumstantial evidence. (*People* v. *Grimes,* 113 Cal.App.2d 365, 367 [248 P.2d 130]; *People* v. *Darnel,* 28 Cal.App.2d 122, 126 [82 P.2d 209].) The trial court, of course, did not have to believe defendant's story that the change came from his child's piggy bank.

In *People* v. *Grimes, supra,* a burglary conviction was sustained upon somewhat similar circumstantial evidence. There a drugstore had been broken into and some benzedrine tablets in a wholesaler's bottle, together with some change, had been stolen. Access to the store had been obtained by breaking the bottom glass door panel on the side door and then reaching in and unlocking the door. Defendant's conviction was sustained on evidence that he was seen facing the side door of the drugstore on the night of the burglary; that he sustained a cut on his hand the night of the burglary; that he had possession of a large amount of change shortly after the burglary; that he possessed some benzedrine tablets in a wholesaler's bottle; and had participated in other burglaries using the same modus operandi. The defendant's conviction

was sustained even though the bottle of tablets he possessed did not have the cost mark on it which the stolen items were reputed to have had, and despite the fact that the bottle could have been obtained in one of the other burglaries.

In *People* v. *Miner,* 156 Cal.App.2d 360 [319 P.2d 385], a building had been broken into, but nothing had been taken. The glass in an entry door had been broken, and fragments were scattered inside the building. A conviction for burglary was sustained on evidence that the defendant was found in an enclosed service area adjacent to the building. When asked what he was doing there, he gave equivocal and erroneous answers. It appeared that access to the service area was had by bending the fence enclosure. Fragments of glass which matched the quality of glass found near the broken door were found in defendant's shoes. The conviction was sustained even though the glass could have been tracked into the service area by another person.

The evidence in the case before us, though circumstantial, is adequate to sustain the finding of the trial court.

### Cross-Examination of Mrs. Pease

By stipulation of the parties, the case was submitted to the trial court on the testimony recorded in the first 33 pages of the transcript from the preliminary hearing. These pages included the direct and cross-examination of Mrs. Pease. The stipulation was with the understanding, however, that the witnesses would be in court and available for cross-examination. At the trial, the district attorney stated that since Mrs. Pease was ill with the flu, she would not be present, and counsel had agreed upon that. The district attorney also attempted, by way of some telegraphic communication, to lay the foundation for the introduction of testimony of a witness whose testimony was not included in that recorded in the first 33 pages of the transcript. (This witness had apparently become unavailable for direct testimony.) Defense counsel made no objection to the fact that Mrs. Pease would not be called for further examination; he did, however, object to the introduction of the other witness' testimony, and that testimony never was introduced. This, having been done with the defendant present, amounted to a waiver of defendant's right to cross-examination. (*People* v. *Stenchever,* 249 Cal.App.2d 74, 79-80 [57 Cal.Rptr. 14]; *People* v. *McDaniel,* 157 Cal.App.2d 492, 499-500 [321 P.2d 497].)

The judgment is affirmed. The appeal from the order denying a new trial, a nonappealable order, is dismissed.

Kaus, P. J., and Aiso, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 13, 1968.

*Assigned by the Chairman of the Judicial Council.