**Thomas JOHNSON, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 8585.**

District of Columbia Court of Appeals.

Argued Aug. 14, 1975.

Decided Dec. 29, 1975.

Gerald S. Rourke, Washington, D. C., appointed by this court, for appellant.

John E. Drury, III, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James M. McMullin and Roger C. Spaeder, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge.

After a trial by jury appellant was convicted of armed robbery for which he was sentenced for a term of from 10 to 30 years and of assault with a deadly weapon for which he received a concurrent sentence of 2 to 6 years. On this appeal appellant challenges his arrest without a warrant as violating his rights under the Fourth Amendment. He also challenges the trial court's ruling denying his motion to suppress certain evidence as being the product of an unlawful search and seizure.[1] We disagree as to both issues.

The victim testified at trial that at about 1 a. m. on July 22, 1972, he was sitting in his automobile with a prostitute in an alley in northwest Washington, when he was approached by a man carrying a gun who ordered him out of the car and forced him to surrender his valuables including his Timex wristwatch and $28 in cash. The victim heard the intruder say at the inception of this incident: "Michele get out of the car". The victim testified that he and the assailant stood face-to-face a few feet from each other and that with the aid of a distant street light, "I memorized that face." The assailant held a shiny silver pistol[2] which he used to strike the victim across the face when he was slow in producing his wallet. When the victim displayed further reluctance to comply with the orders of the assailant, the latter fired one shot into the ground.

The victim reported the robbery to the police describing his assailant as being in his late 20's, about 5 feet 8 or 10 inches with red bush hair, wearing something like a T-shirt or a tank top.

After revisiting the scene of the crime that day the victim encountered on the street the prostitue, Michele, with whom he had been the night before and learned that she was not a woman but a female impersonator whose real name was Marshall Brannon. After Brannon was arrested by the police he admitted being present during the robbery but claimed that a man known to him as "Miss Dicky" was the person who committed the offense. The arresting officer recognized the name "Miss Dicky" as a street walker of whom he had some knowledge but did not know his real name.

---

[1]. At an in-court pretrial lineup the victim readily identified appellant. When some question was raised about the appellant's red bush hair having faded, the victim replied, "I didn't look at the hair, I looked at the face." The trial judge found the complainant's testimony to be credible and accepted his testimony. We find appellant's challenge to the pretrial in-court lineup to be without merit.

His assertion that he was unconstitutionally denied a speedy trial is not supported by the record. We do not find in the record on appeal any support for the assertion that three motions for a speedy trial were made by trial counsel and overruled.

[2]. Later it developed that the gun was a starter pistol.

Brannon, however, identified the assailant from police photographs and it was determined that he was the appellant. The officer, however, did not display the photograph to the victim for identification purposes for the reason that "it was clear to me that the pictures . . . that were available did not look anything like him and it would be no sense in showing them to the complainant . . . ."

Four days later Brannon called the police station and left word for the arresting officer as to where he could locate the appellant. The officer testified that he believed Brannon was telling the truth and immediately went to that address which was a basement apartment.[3] When the officer identified himself to the tenant at the door and advised him that he was looking for a person named Miss Dicky, the tenant invited them in and told him that Miss Dicky was in the back bedroom. The officers found the appellant hiding on a bed underneath the mattress. Appellant was thereupon placed under arrest.

As they were leaving, the tenant called the officers' attention to a refrigerator in an outside hall indicating they should examine it. The refrigerator was inoperative and was used occasionally for storage. It belonged to the owner of the apartment building who leased the building to the present landlord. The officer testified that inside the refrigerator he found a brown paper bag containing a pistol, later identified as the one used in the robbery, a Timex watch, later identified as the victim's and a quantity of papers in the name of Thomas Johnson.

I

Appellant first contends that his arrest without a warrant was unlawful in that it violated his rights under the Fourth Amendment.

■ A warrant is not an essential prerequisite to a valid arrest. Though the use of arrest warrants is to be encouraged, the crucial question on this appeal must be whether the police acted with probable cause in arresting appellant for the offense. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 441 (1963). In the absence of a warrant, the factor of probable cause must be, at a minimum, as great as that required to obtain a warrant. *Townsley v. United States*, D.C. App., 215 A.2d 482, 484 (1965). *See also Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The Supreme Court has recently said:

[W]hile the Court has expressed a preference for the use of arrest warrants when feasible, *Beck v. Ohio, supra,* 379 U.S. at 96, 85 S.Ct. at 228; *Wong Sun v. United States,* 371 U.S. 471, 479–482, 83 S.Ct. 407, 412–414, 9 L.Ed.2d 441 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Trupiano v. United States,* 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L.Ed. 1663 (1948).

Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. . . . [*Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975) (footnote omitted).]

■ It is thus necessary to examine the question, "[W]hether, *at the moment the arrest was made,* the officers had probable cause to make it—whether *at that moment* the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were suffi-

---

3. Apparently he was accompanied by one or more other officers.

cient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio, supra* at 91, 85 S.Ct. at 225 (emphasis supplied).

■ At the moment appellant was arrested [4] the arresting officer knew that an armed robbery, a felony, had been committed and he had a description of the robber from the victim. He had the admission of one person, who appeared to be a co-conspirator or accomplice, who had been present at the robbery and he had a report that it was committed by Miss Dicky, the person arrested in the apartment (appellant here). Appellant had been named by this person and identified from police photographs. The officer also had received a message from him that appellant could be found in a certain apartment. Finally, and most damaging of all, when the officer went into the back bedroom, he found appellant hiding between the mattress and box springs of a bed. The totality of these facts is sufficient to constitute probable cause to justify the arrest of appellant without a warrant for the armed robbery.

## II

Appellant also challenges the trial court's ruling denying his motion to suppress evidence obtained from the refrigerator as being the product of an illegal search and seizure. Specifically, appellant alleges that since the search and seizure of the evidence was not incident to his arrest and was made without a search warrant, his rights under the Fourth Amendment were violated. He asserts that the absence of a search warrant could not be justified under any of the recognized exceptions to that requirement.

■ The recovery of the items was initiated by Mr. Dykes, the lawful tenant of the apartment, when he alerted the arresting officer to the refrigerator as appellant was being removed. The courts have deemed searches reasonable if consented to by the person in lawful possession of the articles seized, or of the premises on which they are found. For instance, such searches have been held valid in cases where the owner-occupant of a house consented to a search of the living room in which the defendant customarily slept on a couch, and a gun was found under the cushion, *Fredricksen v. United States,* 105 U.S.App.D.C. 262, 266 F.2d 463 (1959); and where an apartment dweller, who had taken in without payment of rent two young men (one a relative), discovered, while cleaning, a loaded pistol and other material in the room occupied by them, called the police and on their arrival consented to a search, *Woodard v. United States,* 102 U.S.App. D.C. 393, 254, F.2d 312, *cert. denied,* 357 U.S. 930, 78 S.Ct. 1375, 2 L.Ed.2d 1372 (1958).

The instant case would appear to be even stronger for the government, for here the seized items had either been entrusted to the tenant of the apartment or they had been placed in the refrigerator with his knowledge and consent. We conclude that when he suggested to the police that they should look in the refrigerator he thereby authorized the search [5] and that the evi-

---

4. Because the time of arrest is controlling we need not consider whether probable cause existed at the time the officers appeared at the apartment door to look for appellant and were admitted by the tenant.

5. The arresting officer and the defense attorney engaged in the following colloquy at trial:

Q. Isn't it true that Mr. Dykes pointed to the refrigerator, indicating you might search the refrigerator?

A. No, not as I walked in.

Q. He did at some point indicate you should search the refrigerator; is that right?

A. He indicated to me when we were leaving.

We consider this suggestion, volunteered to the police, to be at least as strong as a formal consent to search made in response to an officer's request. The tenant here had been cooperative throughout. Instead of asking the officer on his arrival if he had a warrant he advised him that the man he wanted was in his bedroom.

dence disclosed as a result thereof could be used against the defendant. *United States v. White,* 268 F.Supp. 998 (D.D.C.1966). *See also Fredericksen v. United States, supra* 105 U.S.App.D.C. at 263, 266 F.2d at 464; *Woodard v. United States, supra* 102 U.S.App.D.C. at 394, 254 F.2d at 313.

This case differs from other situations where a third party has attempted to authorize the search of areas specifically set aside for the exclusive use of the defendant, and the consent has been held invalid.[6] The situation here involves neither consent to search areas exclusively used by or specifically set aside for the use of the appellant nor consent to enter and search a tenant's secured personal effects.

Accordingly we find no merit in appellant's claim that he was the victim of an illegal search and seizure in violation of the Fourth Amendment.

Finding no error, the judgment of conviction is

*Affirmed.*

6. *See, e. g., United States v. Blok,* 88 U.S. App.D.C. 326, 188 F.2d 1019 (1951), where the defendant's superior consented to a search of a desk which defendant had "exclusive right to use"; *Cunningham v. Heinze,* 352 F.2d 1 (9th Cir. 1965), *cert. denied,* 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed.2d 309 (1966), where a landlady allowed the police to search defendant's "room, closet, and effects"; *Reeves v. Warden,* 346 F.2d 915 (4th Cir. 1965), where the defendant's parents consented to a search of defendant's room and bureau and his locked accordian case found in the attic; and *Holzhey v. United States,* 223 F.2d 823 (5th Cir. 1955), where the officers searched "appellant's locked personal effects."